Laubie, J.
The case of the Pittsburgh & Western Railway Company against Sarah Ackworth, is a- proceeding in error -to reverse *585 a judgment rendered in favor of the defendant in error against the plaintiff in error, in the court below, in an action brought to recover damages for an injury to the husband of the defendant in error, resulting in his death, which occurred at New' Castle Junction yard in the state of Pennsylavania, under a statute of that state conferring a right of action upon a widow. In this large and voluminous record, very many exceptions on the part of the plaintiff in' error are pointed out to us, and claims made and elaborately argued as to their erroneous character.
We have carefully read all of this record, and have gone over all of the points of error claimed, and -we find no difficulty, save w’ith one, and with that one exception will I deal in this opinion, and that is as to the question of contributory negligence on the part of the decedent in causing or contributing to produce the injuries which resulted in. his death. This question involves a consideration of the basis of the action — the negligence of the defendant upon which it is claimed the plaintiff below was entitled to recover. The negligence claimed consisted in having in the train a car with a defective brake; that it had no nut upon the head of the brake-shaft to hold the wheel solid on to the shaft; that the wheel lay loosely upon the top of the shaft, and that it was in a dangerous and unfit condition for use, and was known or ought to have been known to the defendant that it w7as so. That, shortly, is the basis of the action — Ihe negligent act claimed on ihe part of the defendant, which it is urged would entitle the plaintiff to recover, if proved.
The second proposition that it is necessary to consider in disposing of this point is as to the duty of the decedent. He was acting in the dual capacity of conductor of a passenger train which ran from the Junction to New Castle, some three miles and back, and as a boss of a shifting gang in the yard, and the gang consisted of himself, an engineer, fireman and two brakemen, who run with him, and w'ere un *586 der liis orders, on the passenger train. Upon the occasion in question, it is evident he was acting in the capacity of a brakeman of this crew. Although the boss, he assisted in doing work, and used the brakes and performed other services in the yard in the shifting of cars, the same as if he had been a brakeman, and frequently went upon the cars for the purpose of setting the brakes. He was to perform these duties under the rules of his company, and one of these rules is especially involved in this inquiry, and needs to be examined. Rule 98 on the back of the time schedule No. 10, which was the schedule that was then in force, and of which, it was shown, he had possession of a copy, and'which it was his duty to know, reads as follows: “Sufficient time is allowed and may be taken by employes in all cases, to make required examination. Coupling by hand is positively forbidden, and all employes engaged in such work are required to provide themselves with a stick for that purpose. Brakes must be examined before attempting to use them, and those having occasion to use them must know their condition, and take no risk. All such cars must be reported to superintendent and dispatchers.” This rule had been in force fora long time, and it must be presumed that he had knowledge of it. His duty, therefore, is to be measured somewhat by the extent and application of this rule, because it was the use of a brake such as has been described that produced his death — he was on the car using the brake, and the wheel came off and threw him underneath the cars, and he was killed. While his duty must be measured with reference to the rules of the company, and especially of this rule No. 98, yet we do not mean to say that its letter must have been complied with. It could not be literally complied with in the full sense of the term, or of the words. A brakeman upon a moving train could not, nor would any company permit him, to stop the train and take time to carefully examine every brake upon it, and without doing so it would be utterly impossible for him to *587 fulfill the letter of this rule. He must not only examine, but he must know its condition, not any particular part of the brake, but the brake as a whole, and a rule like this can not be enforced against an employe according to its letter; but there is a right of subordination to the rules of the company, which the company has the right to expect, and that is a reasonable compliance with the rules so far as the business of the company permits,.and so far as the company furnishes the opportuniy for examination. The brakeman undoubtedly would have a much better opportunity in the yard when merely switching cars, to examine brakes, than he would out on the road, and, so far as the circumstances of the case, and the occasion would permit, Ackworth was oliged to obey this rule. He was required to give reasonable attention to it and a reasonable compliance with its requirements, measured solely by the time and the occasion. Now, there is no dispute but what the nut was off, and had been off, as both parties claim, for a long time, and there is no dispute but what that caused decedent’s death, for he took hold of the brake to stop the car, and wrenching upon it the wheel came off, and he fell by theforce of his own action upon the track underneath the wheels and was killed. The presumption is that he did his duty, and that he knew of the defective character of this brake. This, therefore, naturally threw the burden of proof upon the plaintiff to show that he did not know of'the defect; or if he did, that he was not negligent in using the brake. The plaintiff alleged knowledge upon the part of the company of the defect, and that the decedent did not know it, and this was the only issue between the parties upon this question. On that issue the court charged the jury that if the decedent knew the condition of the brake and knowingly used it, he could not recover, following the case of the Coal and Car Co. v. Norman, in the 49 Ohio St., cited by plaintiff in error. That case is a peculiar one. The doctrine in that case has been declared by some of the courts *588 that have followed it to be, that such defect — the defect in. machinery or having to work in an unduly dangerous or extra hazardous place — -was one of the risks which the servant assumed under his contract, and it has been wrongly placed upon that doctrine. They confound the distinction between contributory negligence and the risk which the employe assumes when he enters the master’s service by reason of his contract of service. By his contract of service he assumes only the ordinary and usual danger's of such employment. If the-master should run his business with an appliance that was fatally defective, for instance the servant, by his contract of employment wuold not take upon himself the risks incident to such character of appliance,unless he actually had knowledge of it at the time. It is not the ordinary dangers of the business as his master runs it that he assumes under his contract,but the ordinary and usual dangers and risks of such business, as generallyjconducted, and the risks of the defective condition of the implements and apparatus furnished by the employer for'his work of which he has knowledge. This extends, therefore, to the condition only of the appliance at the time he enters the service. Its subsequent defects- — defects occurring subsequently in the appliance — are not one of the risks which he assumes by virtue of his contract. .The use-of appliances,or apparatus, which subsequently to his entering the service have become defective, will not defeat his recovery on the ground that it was a risk "the servant assumed by his contract of service. The employer must look to some-other principle of law in a case like that to defeat recovery, and that principle is contributory negligence, and that is a question for the jury under all of the evidence in the case.
The syllabus, in Coal and Car Co. v. Norman, supra, is-as follows: “ In an action by a servant against his master for an-injury resulting from the negligence of the latter in furnishing appliances or in caring for the premises where the work is to be done, the, plaintiff must aver want of knowledge on his- *589 part of thejdefects causing the injury; or that, having such knowledge, he informed the master, and continued in his employment upon a promise, express, or impled, to remedy the defects; an averment that the injury occurred without fault on.his part is not sufficient.” This applies equally to thejappliances of the business and to the place where the work is to be performed; but the decision is to be considered with reference to the facts as they appeared from the petition demurred to, to-wit: that if the plaintiff knew of the defect, he must have known that it would be dangerous to Rim, and one against which he could not protect himself by the exercise of ordinary care in the performance of his work. . In such®a case, continuing to work without objection would bar recovery, not because it was a risk assumed by the contract of service, but because, as appears in the opinion, he •would be guilty of contributory negligence. Let me illustrate by .'reference to Railroad v. Fizpatrick, 31 Ohio St. 479—the w'ell known turntable case — where the question came up as to the knowledge of the servant, who was working the turntable by a crank, of the danger. The turntable was adjacent to the wood-yard track,and when first constructed they were sufficiently far apart to allow the turning of an engine on the turntable and the passage of an engine upon the wood-yard track.- But the company made larger engines, 'and after a wdiile the great majority of the engines were so large that, wRen upon the turntable, the pilot would extend over and across the wood-yard track; that there was danger continually of collision between engines passing upon the wood-yard track and those turned upon the turntable, and sixty or more engines were turned daily on the turntable, and many more passed daily upon the wood-yard track. Fitzpatrick was working the crank on the turntable, and admitted that he had knowledge of this danger of collision, and that caused his injury. Now the court said in that case, whether the plaintiff was guilty of contributory negligence *590 was a question to be left to the jury. Judge Gilmore, in delivering the opinion,said “he was not a skilled mechanic, and might not know the effect of two such forces coming together, and althouhg he knew all of the dangers of the collision occurring sixty times a day, yet he might not have known that it would have been dangerous to him, and it was a proper thing to go to the jury.'-’ Thus declaring that the servant must not only know of the defect, but that it may produce injury to him, that it may be dangerous to him, he must appreciate the danger— the question being whether he was guilty of contributory negligence, under all the circumstances of the case.
In Railway Company v. Murphy, 50 Ohio St., a track repairer was out with a gang upon the track, and was engaged stooping over the rails in fastening the rails with bolts, when a train came along,ran over him and injured him. All discovered the approach of the train but he, and the particular charge of negligence against the company was that it had not provided means for his reasonable safety in that it had not provided rules for the giving of signals of the approach of a train to its trackmen, either by whistle, bell or otherwise, and had not provided a watchman to guard the track repairers against danger under such circumstances, or warn them of the approach of danger. The servant had taken no care for himself. He had made no complaints to the company that track repairing was unusually dangerous by reason of the absence of such rules, or of such watchman, and yet, with all the knowledge he must be presumed to have had, in the absence of evidence to the contrary, of his position and its surrounding dánger, the court say the whole question is one of contributory negligence to be left under proper instructions to the jury. It would seem, therefore, that continuing in the service with a knowledge of the defect, or danger, upon the part of the servant, without complaint, is not always an absolute bar to recovery; and this court heretofore has had *591 occasion to' express the opinion, that when the servant, after entering the service, acquires a knowledge of a defect in the apparatus, or appliances of the master, of such a character that ordinary care in the performance of his duties by the servant, in view thereof, would protect him from injury therefrom, or which was not so obviously and immediately dangerous, but that prudent men would continue in the service, then continuing in such service without complaint would not constitute neglience per sc: and that the exegencies of the service, at the time of the injury, might excuse him for a momentary forgetfulness of the defect, which would be for the jury to determine. See also Whar. on Neg., secs. 214, 218, 219. Bea. on Con. Neg., sec. 140 and notes on p. 373.
In this case, however; the allegations were that the defendant company knew of the defective condition of this brake, or ought to have known it. and that the decedent did not, and that he was injured without fault on his part. There was no admission that he did know, with a plea of matters of excuse for using it with that knowledge, and it would seem, therefore, that if the evidence was that he did have-knowledge, that would end the case, and the issue would be found against the plaintiff. If, however, the jury should find that he did not know, then what? Then the question would be: Was he negligent in not knowing it under the rules of the company? And if he was,then that would end the case. And again, if the jury should find that he was not negligent in not knowing the defect in the brake, then what? Then the question would be whether he at the time exercised ordinary care for his own safet}?.
Let us come now to the testimony in the case on the question of his contributory negligence under the is'sue as we find it. I have said that the presumption is that he inspected the brake; that he performed his duty under the rules of the-company, and knew its condition. Was it shown that he ac *592 tually did not know its condition? The plaintiff below depended for proof of all the facts upon the testimony of one William Robertson; and he was the only witness produced by the plaintiff below, who saw or knew anything of the circumstances, how it happended, how it occurred. As introduced by the plaintiff below, his testimony was taken from a bill of exceptions of the case tried in 1892. There seems to have been an agreement between counsel that the testimony of non-resident witnesses, which had been taken in the former trial of the case, should be read to the jury as depositions of witnesses, and in this way a large part of the testi'mony went to the jury.
The plaintiff read this testimony of Robertson, as testified to by him in 1892, and he testified in substance that he was in the yard at the time of this occurrance, and that he saw Ackworth at the switch, throwing the switch, and that as cars came up those that were to be shifted were cut off; that he got on a car, took hold of the brake, attempted to use it, the wheel came off in his hands,'and he fell in front of the car, and was run over and killed. That in short was his testimony.
The defendant introduced testimony of the sa'me witness, Robertson, given at a later period of time, by the plaintiff at a trial in 1894, May term, 1894, for the purpose of contradicting him, and in that he makes such an exhibition of himself, in connection with his former testimony, that it is utterly impossible to see how a jury could place the slightest reliance upon his testimony. In this later examination he testified that he saw Ackworth about the switch, and saw him attempt to get on the car, to catch hold of the handhold, that he missed it and fell under the car, and was run over; that he saw him in front of the car on the trdck, that he saw him jump up to catch hold of the brake-wheel and he fell off and went down under the car; that while he saw him jump at tlje hand-hold, he didn’t catch hold of it, and *593 he didn't get on the car, and that he didn’t catch hold of the hand-hold, but saw him jump at it,but he missed it and went under the ear. To excuse his contradictions on this important point, counsel for plaintiff below wanted to prove, as was stated, that at the time he gave his second testimony he .was intoxicated, but the court rejected it. and counsel before us, in argument, urged that the court ought to have permitted him to show that, at the second time when the witness was called, he was badly intoxicated, as an excuse for these contradictions. I cannot see how7 it would have benefited the plaintiff unless we discredit the old adage: In vino veritas. But, at all events, neither of his accounts of the accident was true. Robertson also testified that he was at that time in the service of the defendant company, running on a local freight from New Castle to Allegheny and back, and that he was down at the yard that Saturday afternoon because he had missed his train that morning,and that he wanted to get the train to go to Allegheny so as to return on the return trip which would not be until Monday, as his train didn’t run on Sunday; and he says he did go to Allegheny that night; and the man, Moore, whom plaintiff produced on the second trial, says also they went to Allegheny that night. Yet in the latter trial Robertson shears he did not go to Allegheny that night, staid in New Castle, and went the next afternoon; that he was at work for the Pittsburgh and Western on a local, and that the local left New Castle at 5:30. P. M., and that his trains were Nos. 41 and 41, but they could not be found on the schedule, and there was only one local, and that was No. 27, and it left at 5:30 in the morning. The other testimony in the case — all of which would have t.o be -fabricated if not true — showed that he was not in the employ of the railroad company at that time, the accident having occurred on the 6th of July, and that he was not in its employ until the 17th. The conductor of the local swears that he never worked, for him, that *594 he was riming the local during the month up until the 27th of July, and produced his time book of that month, and the original is in the record, and it shows four or five names, but Robertson is not among the number; and they produced also the time card .showing when Robertson did work, and the number of days employed, and that he made $25,45; and they show his receipt for that amount at the end of the month, so that it is impossible to conceive how a jury could have placed any reliance whatever upon that mail's testimony.
All the other witnesses in the case testify that Ackworth was not at the switch, but was out on this car all the time standing by this brake; that Newell threw the switch, if I remember the name correctly; that Ackworth remained on the car, and did not get off that car until he fell off and was killed, and going up and coming back past the switch he remained on the car, standing upright alongside of that brake, and ill at he had absolutely used it once going up on the train, but when he undertook to use it again the wheel came off and lie went under the car. Look at it for a moment and consider it —the character of the defect — it was the nut off the top of the brake-shaft which came up in the center of the wheel — which was perhaps a foot in diameter — that he took hold of the wheel, wrenched around and it came off the brake. As he stood his head would be above the wheel, and naturally in taking hold of the wheel he would look at it, and right there between his hands was that defect visible. There can be no inference except that had he performed his duty to the extent that the time and circumstances would permit, by a mere glance of the eye, he would have detected the defect, so that the evidence supported the presumption that he knew of the defect and used the brake voluntarily with that knowledge. If he looked at the brake-wheel at all he could not have but seen it. We are unable to conceive how the jury could have found otherwise, unless the charge may have misled or coufused them as to the issue and as to *595 the burden of proof. Part of it is as follows: 1 ‘ Upon the question of negligence upon the part of the defendant and as to that negligence being the proximate cause of the injury to Ackworth, and as to want of knowledge of the defect on the part of Ackworth, the burden of proof is upon the plaintiff, and this makes it incumbent upon her to produce a preponderance of the testimony in support of each of these propositions, and unless that preponderance is produced she is not entitled to a finding in her favor. Upon the question of contributory negligence or violation of the rule by Ackworth, the burden of proof is upon the defendant, and this makes it incumbent upon the defendant to produce a preponderance of the testimony that Ackworth did not act with ordinary care or wasi acting in violation of the rules upon .that occasion, and that this failure to so act or the violation of the -rules contributed to produce or cause his injuries, unless the testimony offered by the plaintiff in this case raises the presumption of contributory negligence or a violation of the rules on the part of Ackworth, in which event the burden of proof would then rest upon the plaintiff to rebut and remove this presumption and to produce a preponderance of the evidence that contributory negligence did not exist, and that the rules of the defendant were being observed by him at that time.”
Notwithstanding the evidence as I have dislosed it, notwithstanding the presumption was that he had obeyed the rules and knew of the defect, and notwithstanding the ground of recovery alleged in the petition was that the decedent did not know of the defect, which involved an admission of a violation or non-observance of the rules of the company in evidene in the case, the learned judge told the jury that upon the question of the contributory negligence, or violation of the rules, by Ackworth, the burden of proof was upon the defendant, unless the testimony of the plaintiff raised a .contrary presumption.
*596 We agree with counsel that this was a mistake upon the part of the court, which had its effect upon the jury in bringing the verdict. The court was plainly attempting to follow the ordinary rule laid down in regard to the burden of proof upon contributory negligence as defined by the court of last resort. It is a peculiar rule and one which ought not to be extended, but strictly confined within the actual limits of its true application.
We admit, it seems a good deal as if the court, in turning over to the jury the question of the burden of proof, abdicates not only its powers, but its duties and its obligations toward the parties; that the court ought to be able to judge upon whom the burden of proof rests, and to determine for itself whether there was evidence raising the presumption of negligence, which would cast the burden of proof upon the plaintiff; that it is as capable of doing that as the jury; just as capable of doing that as it is to determine whether there is sufficient evidence of negligence to carry the case to the jury, or whether there is sufficient evidence of the loss of a paper to permit verbal evidence of its contents to go to the jury, and if it were an original question I should think it ought not to abdicate its duty in that regard in one case any more than the other. The rule is different, however, to the extent named, but it should not, and we think does not, apply when the only reasonable presumption arising from the plaintiff’s testimony is one of negligence. It is only in a doubtful case, that the question should be submitted to the jury.
It is clear that the evidence of the plaintiff did raise such presumption of negligence, and that the burden of proof was upon the plaintiff. In allowing the jury to determine that question, and in permitting the jury to say that there was no evidence in the case on the part of the plaintiff that raised a presumption of the decedent’s negligence, and that the burden of proof rested upon defendant, we think *597 was misleading,and contributed to bring an unfortunate verdict, and one that is not sustained by the .evidence in the case, and the case must be reversed.
Jones & Anderson, for plaintiff.
G. F. Anri, and F. Jacobs, for defendant.