DECISION
This is an appeal by plaintiff-appellant, Charles Sylvester, from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, John L. Thro and Donald Millar.
This case arose out of plaintiff's purchase of a horse, "Messenger T," at the "Ohio Selected JUG" sale on September 19, 1994. A catalog issued for the sale provided information concerning the horse, including its year of birth, its sire and dam. The catalog indicated that the "1st Dam" (mother) of Messenger T was a horse named "Grouse," and that the sire of Grouse was a horse named "Baltic Speed."
The Kentucky Standardbred Sales Company conducted the Ohio Selected JUG sale. At the time of the sale, plaintiff signed an Acknowledgement of Purchase, stating in part:
 And acknowledge that I have read the Conditions of Sale as printed in the catalogue for this sale; that I bid for said horse subject to said Conditions of Sale and agree to the same and acknowledge that this confirmation of purchase is subject to such Conditions. * * *
On September 21, 1998, plaintiff filed a complaint, naming as defendants Mary Rische (d.b.a. Woods Edge Farm),[1] John L. Thro, and Donald Millar (d.b.a. Bonnie Keek Farms). In the complaint, plaintiff alleged that Rische acted as a selling agent for defendant Millar in the sale of Messenger T on September 19, 1994. It was alleged that defendants Millar and Thro were the breeders of Messenger T. Plaintiff further alleged that defendants Millar and Thro (hereafter "defendants") both fraudulently represented that the sire of Messenger T's first dam was Baltic Speed.
On September 3, 1999, plaintiff filed an amended complaint. Plaintiff filed a second amended complaint on October 12, 1999. On November 30, 1999, defendants filed answers to plaintiff's second amended complaint.
On December 17, 1999, defendants filed a motion for summary judgment. On January 10, 2000, plaintiff filed a memorandum contra defendants' motion for summary judgment. Defendants filed a reply brief on January 18, 2000.
On September 8, 2000, the trial court sustained defendants' motion for summary judgment. The decision of the trial court was journalized by judgment entry filed September 26, 2000.
On appeal, plaintiff sets forth the following two assignments of error for review:
ASSIGNMENT OF ERROR NO. 1
 THE TRIAL COURT ERRED IN HOLDING THAT THE CONTRACTUAL PROVISION LIMITING THE STATUTE OF LIMITATIONS TO ONE YEAR WAS VALID AND GRANTING APPELLEE' [sic] MOTION FOR SUMMARY JUDGMENT.
ASSIGNMENT OF ERROR NO. 2
 THE TRIAL COURT ERRED IN HOLDING THAT APPELLANT'S TORT BASED CLAIMS WERE SUBJECT TO THE CONTRACTUAL PROVISION LIMITING THE TIME PERIOD FOR BRINGING AN ACTION AND GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT.
Pursuant to Civ.R. 56(C), summary judgment shall not be rendered "unless it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made." Further, the nonmoving party is "entitled to have the evidence * * * construed most strongly in the party's favor." Id.
When a motion for summary judgment is made and supported with evidence, "an adverse party may not rest upon the mere allegations or denials of the party's pleadings." Civ.R. 56(E). Rather, "the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Id. Accordingly, "[i]f the party does not so respond, summary judgment, if appropriate, shall be entered against the party." Id.
Under his first assignment of error, plaintiff asserts that the trial court erred in holding that plaintiff's breach of warranty claims against defendants were time barred based upon a one-year contractual limitations provision in the "Contracts of Sale." Plaintiff argues that the limitations provision in the instant case is unclear and confusing, and that the provision requiring any legal action to be brought within one year is so unreasonable that it is unconscionable.
At issue is the following language contained in the "Conditions of Sale" document:
 * * * RIGHTS AND REMEDIES. Any cause of action arising out of the purchase and sale of any animal at this sale shall be commenced in not more than one year after the sale. * * *
The trial court, in construing the above provision, found that plaintiff was required to bring any breach of warranty claims against defendants within one year of the sale. The trial court noted that the date of sale was September 19, 1994, and that plaintiff's initial complaint was filed on September 21, 1998, more than three years after the deadline imposed by the Conditions of Sale. Further, the court determined that the one-year limitations provision was "not unclear, and the one year limitation was not unreasonable."
R.C. 1302.98 [UCC 2-725] sets forth the statute of limitations for a contract for the sale of goods, and states, in pertinent part:
 (A) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.
Thus, under the above section, written agreements reducing the period of limitations are authorized, but such shortened periods cannot be less than one year. In general, Ohio courts have upheld limitation provisions as long as they are reasonable. Globe American Cas. Co. v. Goodman (1974), 41 Ohio App.2d 231, 237. ("It is well established that in the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in a general statute of limitations provided that the shorter period itself shall be a reasonable period.")
Plaintiff contends that a one-year limitation period is unreasonable because of the nature of the transaction, i.e., an auction. Specifically, plaintiff argues that because the contract arose out of an auction he did not have meaningful choice in that he could not leave the auction and purchase the same horse elsewhere. We find plaintiff's argument to be without merit.
In the context of an auction, it has been held that a seller has a right to make a conditional warranty "contained in the rules, and in sales made under these rules the limitation thereof necessarily became a part of the contract." Bailey Walters v. Peters (1906), 10 Ohio C.C. 589, 593. Further, the purchaser at an auction "is at liberty to buy or not to buy at a sale where such rules are promulgated with such limitations of warranty." Id. Thus, the sellers might "refuse by their rules to warrant at all, and then the doctrine of caveat emptor would apply; so that if there be a limited warranty the purchaser, in order to avail himself of the terms of the warranty, must comply with the conditions thereof." Id.
As noted, the Rights and Remedies provision provides that "[a]ny cause of action arising out of the purchase and sale of any animal at this sale shall be commenced in not more than one year after the sale." The wording of the provision is clear and unambiguous, limiting to one year the time in which a cause of action arising out of the sale can be commenced. This form of limitation is permissible and contemplated under R.C. 1302.98. Further, plaintiff was under no compulsion to bid on the horse. Bailey Walters, supra, at 593. The fact that the transaction arose out of an auction does not, per se, render the limitation provision unconscionable. Under the circumstances of this case, we conclude that the one-year limitation period was reasonable.
Plaintiff also contends that the location of the contractual limitation provision was confusing to a "layman" reading the agreement. More specifically, plaintiff argues that the limitation provision in the "Conditions of Sale" should have been placed under the "Eleventh" condition, identified under the title "CONTROVERSIES," rather than under the "Twelfth" condition, identified under the title "RIGHTS AND REMEDIES."
Plaintiff's contention that the limitation provision should have been included under the "CONTROVERSIES" condition rather than the "RIGHTS AND REMEDIES" condition is unpersuasive. The limitation provision is set forth in the first sentence of the "RIGHTS AND REMEDIES" condition, and it is as conspicuous as other provisions in the Conditions of Sale. Further, the language is sufficiently clear as to the time provision for causes of action arising out of the sale. We note that the "RIGHTS AND REMEDIES" condition appears on page thirteen, one page after the "CONTROVERSIES" condition on page twelve. Here, there is no contention that plaintiff was prevented from reading the document prior to the sale, and merely because the document may be lengthy does not render an otherwise clearly worded provision unclear. Upon review, we conclude that the trial court did not err in granting summary judgment in favor of defendants on plaintiff's breach of warranty claims based on the one-year limitation provision contained in the Conditions of Sale.
Accordingly, plaintiff's first assignment of error is overruled.
Under the second assignment of error, plaintiff asserts that the trial court erred in holding that plaintiff's tort-based claims were barred based upon the contractual provision limiting the time for bringing an action.
The trial court, in addressing plaintiff's claims for fraud and misrepresentation, concluded that all of the damages alleged by plaintiff were "economic damages," and thus subject to the terms of the contract. More specifically, the trial court relied upon the holding of the Ohio Supreme Court in Sun Refining Marketing Co. v. Crosby Valve Gage Co. (1994), 68 Ohio St.3d 397. In Sun Refining, the court held that "[t]he character of the loss determines whether a commercial party may recover in tort," and "[i]f the loss is an economic one, a cause of action will lie only in contract." Id. at 399.
Plaintiff argues that, because his tort claims are based on the intentional tort of fraud and not negligence or strict liability, he is not precluded from bringing separate and distinct tort claims for fraud when seeking economic damages. In support, plaintiff relies on Ferro Corp. v. Blaw Knox Food Chem. Equip. Co. (1997), 121 Ohio St.3d 434. In Ferro, the court held that an appellant which entered into a contract of sale with a manufacturing company for the purchase of a stainless steel reactor, fabricated and manufactured by the manufacturing company, was not precluded from asserting claims for fraud and negligent misrepresentation. Specifically, the court held that appellant alleged both economic losses and property damage, and that "these claims are not limited to the allegation that the product itself was defective, but they go to the actions of appellee * * * in its negotiation of the contract." Id. at 441.
Even assuming, arguendo, that the trial court erred in holding that plaintiff's tort claims were barred based on the court's finding that all of plaintiff's losses were economic, we still conclude, albeit for different reasons, that summary judgment was properly granted as to the tort claims alleged.
In Russ v. TRW, Inc. (1991), 59 Ohio St.3d 42, 49, the Ohio Supreme Court noted that an action for fraud requires proof of the following elements:
 * * * (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. * * *
In the present case, the record indicates that defendants' motion for summary judgment was supported by the affidavits of Millar and Thro. The affidavit of Millar states in part that he "obtained ownership of a horse named Grouse, the dam of Messenger T, in October, 1992," and that "Messenger T was foaled March 24, 1993." Millar further averred that he "never had nor claimed any personal knowledge regarding Grouse's paternity or lineage," and that he "never at any time made any knowing misrepresentation regarding any facts concerning Messenger T."
The affidavit of Thro avers the following. Thro was a resident of Mankato, Minnesota at all times pertinent to this action. Grouse, the dam of Messenger T, was foaled in 1987 in New York, and any error in identifying the sire and dam of Grouse "was committed not by Affiant, but by the persons in New York who had physical possession of Grouse and Grouse's sire and dam." Thro stated that he has had "no contact with the State of Ohio, save the fact that some horses that he owned, including Grouse, were moved to Ohio shortly before he transferred ownership of the horses in October, 1992." Thro further averred that he has "never had physical custody of, nor has he ever seen, Grouse or Messenger T," and that he was "unaware, until the institution of this action, of the sale of Messenger T to Mr. Sylvester in September, 1994." Finally, he averred that he had no interest in the transaction at issue, and "never made any representation of any kind to facilitate that transaction," nor did he ever make "any knowing misrepresentation regarding any facts concerning Messenger T."
If a party seeking summary judgment carries its initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the nonmoving party then has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. Dresher v. Burt (1996), 75 Ohio St.3d 280,293. If the nonmovant "does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Id.
In the present case, defendants met their initial burden, based upon the submission of their affidavits, to show that there was no genuine issue of fact as to the allegations that they committed fraud in connection with the sale of the horse. In plaintiff's memorandum in opposition to defendants' motion for summary judgment, plaintiff did not provide any affidavits or other form of evidence to rebut or challenge defendants' statements specifically denying any fraudulent intent. Rather, plaintiff rested upon the allegations in his complaint. Construing the evidence most strongly in favor of plaintiff, there is no evidence to support a finding that defendants misrepresented a material fact concerning the sale of the horse. Accordingly, because plaintiff failed to set forth specific facts that precluded summary judgment, the trial court did not err in granting defendants' motion for summary judgment as to plaintiff's tort claims.
Plaintiff's second assignment of error is without merit and is overruled.
Based upon the foregoing, plaintiff's first and second assignments of error are overruled and the judgment of the trial court is hereby affirmed.
 __________________ DESHLER, J.
PETREE and LAZARUS, JJ., concur.
[1] Although Mary Rische was named as a defendant, the record indicates that service was never perfected on her. Thus, while this appeal is properly before this court, the only defendants in this action are Thro and Millar.