SUN REFINING AND MARKETING COMPANY
*v.* CROSBY VALVE AND GAGE COMPANY.

[Cite as *Sun Refining & Marketing Co. v. Crosby Valve & Gage Co.* (1994), 68 Ohio St.3d 397.]

(No. 93–739—Submitted September 29, 1993—Decided March 2, 1994.)

*Jones & Scheich*, *Martin B. Morrissey* and *Christopher F. Jones*, for respondent.

*Robison*, *Curphey & O'Connell*, *Jack Zouhary* and *Thomas J. Antonini*, for petitioner.

PFEIFER, J.  Our response to the district court's certified question is as follows: When a sophisticated commercial buyer sues for property damage caused by an allegedly defective product, claims relating to property other than the defective product itself are controlled by the statute of limitations contained in R.C. 2305.10 for personal property and R.C. 2305.09(D) for real property.  Our rationale is set forth below.

In *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.* (1989) 42 Ohio St.3d 40, 537 N.E.2d 624, this court made it clear that in a commercial setting, a buyer's proper remedy for recovery of economic losses resulting from damage to a defective product itself is through a contract action for breach of warranty under the UCC.  This court held that the buyer could not recover for economic losses premised on tort theories "in the absence of injury to persons or damage to other property." *Id.* at 51, 537 N.E.2d at 635.  The court's definition of "economic loss" was as follows:

" 'Economic loss' is described as either direct or indirect.  'Direct' economic loss includes the loss attributable to the decreased value of the property itself. Generally, this type of damages encompasses 'the difference between the actual value of the defective product and the value it would have had had it not been defective.'  * * * It may also be described as 'the loss of the benefit of the bargain * * *.'  * * * 'Indirect' economic loss includes the consequential losses sustained by the purchaser of the defective product, which may include the value of production time lost and the resulting lost profits." *Chemtrol* at 43–44, 537 N.E.2d at 629.

The court implied that commercial parties are not limited to contractual causes of action when a defective product causes tort damages, *i.e.*, damage to persons or property other than the product itself.

This court directly recognized that a commercial buyer may recover damages based upon tort theories of liability in *Lawyers Cooperative Publishing Co. v. Muething* (1992), 65 Ohio St.3d 273, 603 N.E.2d 969.  In *Lawyers Cooperative*, the counterclaimant attorney sought damages for humiliation, loss of reputation, and damage to his law practice due to the counterclaim defendant's alleged

negligence in publishing faulty information in law books the lawyer had purchased. The defendant publisher claimed that those causes of action should be controlled by the statute of limitations contained in Ohio's UCC provisions.

This court found that the lawyer had the *option* of filing a contract claim under Ohio's UCC, but was not limited to that claim due to the nature of his damages. The court found that the lawyer did not merely seek recovery for economic loss— his allegations of humiliation and loss of reputation were allegations of personal injury and his allegation of injury to his law practice was an allegation of property damage. This court held that *Chemtrol,* which precluded recovery of economic losses on tort theories of liability, did not so preclude the lawyer's recovery of tort damages.

The character of the loss determines whether a commercial party may recover in tort. If the loss is an economic one, a cause of action will lie only in contract.

In the present case, for example, Sun does not seek recovery for damage to the disc nor for loss of profits due to the failure of the disc or other such consequential damages. It seeks recovery for damage to its real estate and fixtures. The damages it seeks are not economic, and are therefore recoverable under a tort theory of liability. For parties like Sun who suffer such injuries, the tort theory of breach of implied warranty is available. *Lonzrick v. Republic Steel Corp.* (1966), 6 Ohio St.2d 227, 229–230, 35 O.O.2d 404, 405–406, 218 N.E.2d 185, 188.

This line of decisions does not infringe upon Ohio's UCC provisions. The underlying purpose of the UCC is, in part, to clarify and make uniform commercial law. R.C. 1301.02(B)(1) and (3). That is, the UCC lends predictability to commercial transactions. It governs the bargain. If the product is faulty, inefficient, or breaks, resulting in diminished economic returns, the proper remedy is through the contract and the relevant UCC provisions. When the benefit of the bargain is diminished or lost, the contract and the UCC control the parties' rights.

When persons or property *outside* the original bargain are damaged, the terms of the bargain no longer control. In such an instance, when there is more than a loss of the benefit of the bargain, when the damages fall outside the definition of "economic loss," a duty outside the contract has been breached. That breach of duty is governed by tort law.

A sales contract does not govern the entire relationship between commercial parties—it governs only the sale of the product. A seller still owes to the buyer the same noncontractual duty that he owes to everyone else—that the seller's product will not cause the destruction of another's property.

Therefore, in a products-liability action between sophisticated commercial parties, the character of the loss determines the applicable statute of limitations. Losses due to a diminishing of the expected benefit of the bargain fall under the statute of limitations set forth in R.C. 1302.98 (UCC 2–725). Causes of action for losses resulting from damage to property outside the original bargain are controlled by the statute of limitations in either R.C. 2305.10 or 2305.09(D).

A.W. SWEENEY and DOUGLAS, JJ., concur.

RESNICK, J., concurs in the syllabus and judgment only.

F.E. SWEENEY, J., concurs in judgment only.

MOYER, C.J., and WRIGHT, J., dissent.

WRIGHT, J., dissenting. On October 18, 1985, Crosby Valve & Gage Company shipped to Sun Refining and Marketing Company a pressure release disc manufactured precisely to Sun Refining's specifications. The purchase involved an arm's-length commercial transaction between two sophisticated parties that were dealing in privity. Included in the contract were terms negotiated by Sun Refining and Crosby Valve concerning risk of loss from defects in the product.

Less than a month later, on November 12, 1985, a Sun Refining employee released some built-up pressure into a concrete sewer which exploded, injuring two employees and causing some property damage.[1] Alleging that the disc had malfunctioned, Sun Refining filed this cause of action in federal court on October 19, 1989—one day after the four-year statute of limitations period for causes of action filed under the UCC had expired.

Because Sun Refining is time-barred from bringing its breach of contract action against Crosby Valve, its only alternative is to seek recovery in tort. The general tort statute of limitations is also four years, but would not have begun to run until the explosion. In its complaint, therefore, Sun Refining seeks to recover under strict liability, breach of warranty, and negligence.

Crosby Valve maintains that breach of warranty claims are governed by the UCC, while Sun Refining asserts that its breach of warranty claim sounds in tort.

The narrow issue facing this court is whether Count II, the *breach of warranty claim,* is time-barred by R.C. 1302.98 (UCC 2–725). The federal district court posed the question as: "[W]hich statute of limitations applies to parties to a contract when the plaintiff is suing for property damage[?]"

---

1. Only the property damage is at issue here. The personal injury claims of the two employees were settled in 1989.

The majority concludes with no supporting authority that it is the character of the loss and not the relationship of the parties that determines whether a *commercial party in privity* may recover on a theory of *implied* breach of warranty. Because I believe that this case is wholly governed by the UCC, and that the majority's decision lacks sound reasoning, is a departure from Ohio law, and is bad policy, I must dissent.

The law of tort products liability evolved for several reasons: a lack of contractual privity between the manufacturer and the ultimate consumer, the uneven bargaining power between buyer and seller, the difficulty of proving negligence by the manufacturer when the consumer is several steps down the chain of distribution, and the deterrent value of placing the risk of loss on the manufacturer because it is better able to correct the defects. In other words, the law of products liability arose because traditional sales warranties with their requirement of privity failed to give injured persons who are not in privity with the manufacturer adequate protection. Ohio recognized this problem in *Lonzrick v. Republic Steel Corp.* (1966), 6 Ohio St.2d 227, 35 O.O.2d 404, 218 N.E.2d 185, and thus permitted a plaintiff who was not in privity to bring an action based upon implied warranty in tort.

However, neither *Lonzrick* nor the other two cases cited by the majority support the majority's position.

In *Lonzrick*, this court in dicta prefaced its argument with the statement that in products liability cases the plaintiff may pursue either an action in tort grounded in negligence, a cause of action based on the contract, or an implied warranty in tort. Because Lonzrick did not allege negligence and because there was no privity between him and the defendant, the court examined the implied warranty in tort argument. Citing many of the reasons for the rise of products liability claims that I have listed above, the court went on to hold that there need be no contractual relationship between a plaintiff and a defendant in order to bring a breach of warranty action in tort. Thus, *Lonzrick* stands for the proposition that *parties who are not in privity* are now permitted to bring an action for an implied breach of warranty. It does not suggest that those who are already in privity may avail themselves of that remedy and thus circumvent an existing contractual agreement.

Moreover, the fact that the *Lonzrick* court stated in dicta that a plaintiff may pursue a products liability action in tort grounded upon negligence is of no assistance in this case. Even though Sun Refining seeks recovery in negligence in Count III of its complaint, that is not the issue before this court. Rather, the question is whether the UCC statute of limitations or the general tort statute of limitations applies to Sun Refining's breach of warranty action. *Lonzrick* provides no authority for the majority.

Likewise, *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.* (1989), 42 Ohio St.3d 40, 537 N.E.2d 624, and *Lawyers Cooperative Publishing Co. v. Muething* (1992), 65 Ohio St.3d 273, 603 N.E.2d 969, are readily distinguishable from this case. In *Chemtrol*, we permitted "[a] commercial buyer seeking recovery from the seller for economic losses resulting from damage to the defective product itself [to] maintain a contract action for breach of warranty under the Uniform Commercial Code * * *." *Chemtrol*, paragraph two of the syllabus. The majority today correctly points that out. However, the majority misstates the second part of that syllabus paragraph in *Chemtrol* by asserting "the buyer could not recover for economic losses *premised on tort theories* 'in absence of injury to persons or damage to other property [emphasis added],'" thus implying that *all* tort remedies are available to a commercial buyer in the case of injury to person or damage to property. A close reading of the language in *Chemtrol* reveals the majority's error. The complete statement in *Chemtrol* actually reads that "in absence of injury to persons or damage to other property, the commercial buyer may not recover for economic losses *premised on tort theories of strict liability or negligence.*" (Emphasis added.) *Chemtrol*, paragraph two of the syllabus. While this may imply that an action for negligence or strict liability may lie if there is injury to persons or property, it in no way suggests that in such a case an *action for breach of warranty* would lie. Thus, *Chemtrol* is no support for the majority either.

Finally, the majority cites *Muething* for the principle that this court has "directly recognized that a commercial buyer may recover damages based upon tort theories of liability." This is true to the extent that we permitted Muething to maintain a tort cause of action in *negligence* even though he was a commercial buyer with privity. This holding is perfectly consistent with the syllabus paragraph in *Chemtrol* which implies that a commercial buyer in privity may bring a tort cause of action in *negligence* or *strict liability* for injury to persons or damage to property. But the *Muething* court did not address the issue of whether a commercial buyer in privity may sustain a tort cause of action for *breach of warranty.* Indeed, in my judgment that issue is foreclosed by our holding in *Chemtrol.*

Furthermore, the *Muething* and *Chemtrol* decisions neither suggest nor support the majority's assertion that "[t]he character of the loss determines whether a commercial party may recover in tort." Significantly, the majority offers no authority for this bold statement.

The proper law governing this case is the UCC. R.C. 1302.98 (UCC 2–725) states in relevant part:

"(A) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. * * *

"(B) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made * * *."

Moreover, R.C. 1302.89 (UCC 2–715) states in part:

"(B) Consequential damages resulting from the seller's breach include:

" * * *

"(2) *injury to* person or *property* proximately resulting *from any breach of warranty.*" (Emphasis added.)

The import of these two code sections should be apparent. When commercial parties are bargaining in privity at arm's length, a cause of action for property damage resulting from a breach of warranty is subject to the UCC. That cause of action must be filed within four years of the breach, which occurs upon tender of delivery.

The Official Comment to UCC 2–725 states the policy reasons behind the statute of limitations: "[The purpose of this section is to] introduce a uniform statute of limitations for sales contracts, thus eliminating the jurisdictional variations and providing needed relief from concerns doing business on a nationwide scale whose contracts have heretofore been governed by several different periods of limitation * * *. This Article takes sales contracts out of the general laws limiting the time for commencing contractual actions and selects a four year period as the most appropriate to modern business practice."

We indicated our support for this position in *Chemtrol* by quoting the Eighth District Court of Appeals:

" 'Application of the doctrine of implied warranty in tort to all products liability cases would render useless many, if not all, of the Uniform Commercial Code provisions involving products liability. For example, * * * whenever the doctrine of implied warranty in tort is applicable, the provisions of the Uniform Commercial Code permitting the parties to contractually modify or exclude warranties, and to modify or limit remedies are of no avail. Stated another way, where implied warranty in tort applies, the parties are not free to determine by contract the quality of goods which the seller is bound to deliver or the remedies available to the buyer in the event that the goods do not measure up to the agreed quality. It is clear, then, that the doctrine of implied warranty in tort must be limited in its applicability. Otherwise, unlimited application would emasculate the Uniform Commercial Code provisions dealing with products liability.' " *Chemtrol,* 42 Ohio St.3d at 49–50, 537 N.E.2d at 634, quoting *Avenell v. Westinghouse Elec. Corp.* (1974), 41 Ohio App.2d 150, 157–158, 70 O.O.2d 316, 321, 324 N.E.2d 583, 588.

In my judgment, the relationship between Crosby Valve and Sun Refining falls squarely within the policy reasons established by the drafters of the UCC and sanctioned by this court. The parties made an arm's-length transaction and were free to negotiate the terms of the contract. Thus, their transaction, including remedies, is governed by the UCC. It is unfortunate that Sun Refining delayed filing its cause of action for so long, but in my opinion the policy behind the UCC is sound and, considering the circumstances, presented Sun Refining with a sufficient remedy. Because I believe that where sophisticated commercial parties deal in privity a cause of action for property damage resulting from a breach of warranty is subject to the UCC statute of limitations, I must respectfully dissent.

MOYER, C.J., concurs in the foregoing dissenting opinion.