**BOYAS EXCAVATING, INC., Appellant,**

**v.**

**POWERSCREEN of OHIO, INC. et al., Appellees.**

[Cite as *Boyas Excavating, Inc. v. Powerscreen
of Ohio, Inc.* (2000), 139 Ohio App.3d 201.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 76848.

Decided Oct. 2, 2000.

202

*Mansour, Gavin, Gerlack & Manos Co., L.P.A., Bruce G. Rinker* and *Bradford J. Patrick,* for appellant.

*Smith & Colner* and *James D. Colner,* for appellee Powerscreen of Ohio, Inc.

*Seeley, Savidge & Ebert Co., L.P.A.,* and *Keith A. Savidge,* for appellees Simplicity Engineering, Inc., n.k.a. Powerscreen International Dist., Limited, f.n.a. Powerscreen International Limited; and Powerscreen, USA, LLC.

*Cullen Law Firm Ltd.* and *James P. Cullen,* for appellee Superior Industries.

*McCarthy, Palmer, Volkema & Thomas* and *Dennis M. McCarthy,* for appellee Superior Industries.

*Elleman & Newcome* and *Ronald E. Newcome,* for appellee Powerscreen of Ohio, Inc.

PORTER, Judge.

Plaintiff-appellant Boyas Excavating, Inc. appeals from the summary judgment entered in favor of defendants-appellees Powerscreen of Ohio, Inc. et al., arising out of Boyas's claim that defendants designed and delivered a defective piece of heavy equipment used in Boyas's quarrying business. Plaintiff claims that disputed issues of material fact precluded summary judgment. We find merit to the appeal, reverse in part, affirm in part, and remand for further proceedings.

Peter Boyas and his son, Michael ("the Boyases"), own and operate the Boyas rock quarrying facility in Valley View, Ohio, on the east slope of the Cuyahoga River. Boyas markets the rock for a variety of uses.

This case involves the alleged failure of a piece of heavy industrial equipment known as a Mobile Rip–Rap machine customized to perform a specific job,

namely, the sorting of the rock at the Boyas quarry into four particular sizes. Stone blasted from a quarry face is dumped by a front-end loader into the vibrating bed of the machine. The stone is vibrated forward by a diesel engine onto grizzly bars, which separate the rocks by various sizes. The rocks exit the machine via chutes or conveyors.

Boyas had contracted with Peter Kiewit to quarry a very large-sized stone of specific dimension for the Kiewit contract. The armor stone for the Kiewit contract was to be used for a break wall at Burke Lakefront Airport. Because of the uniquely large dimension of the slabs of Kiewit stone to be quarried, it was necessary for Boyas to quarry and concurrently handle a far greater volume of surrounding undersize rock. This rock was not suitable for the Kiewit job, but could be put to other uses. It was for this purpose that the purchase of the Rip–Rap machine was planned.

During a visit to the Valley View quarry, the Boyases specifically informed Powerscreen of Ohio's representatives that they needed the Rip–Rap machine to be designed to process such rock and separate it into four discrete sizes according to ODOT specifications. Thus, Boyas's goal was to produce four different sizes—the large slabs of Kiewit stone and the three smaller ODOT sizes—through defendants' customizing of the Rip–Rap machine.

Subsequently, the Boyases accompanied representatives of Powerscreen of Ohio to a quarry in Michigan, where a similar machine was being utilized. During this visit, the Boyases further suggested that specific modifications be made to the Rip–Rap machine's grizzly bars, which they believed would render it better suited for their site and job specifications.

Powerscreen of Ohio's sales representative, Sean Donaghy, in his affidavit avers that the Michigan visit took place on December 16, when Simplicity's sales manager, Jim Butler, was present. Donaghy states that it was the Boyases who requested that the Rip Rap machine have a conveyor system rather than a chute system used on the Michigan machine. According to Donaghy, Butler confirmed later that day that the machine could be built as requested.

On December 17, 1996, Boyas signed a sales order to purchase the Rip–Rap machine for $160,000 from Powerscreen of Ohio. The sales order had a one-year warranty and provided the machine was to be delivered no later than the second week of February 1997. On the reverse side of the sales order were numerous printed terms and conditions of sale, including warranties, disclaimers, and limitation-of-damage provisions at issue herein. Powerscreen of Ohio knew of Boyas's need to have the machine promptly operational. Powerscreen of Ohio then ordered the machine from Simplicity Engineering. Simplicity ordered the chassis for the machine from Superior Industries and apparently signed off on the general concept of the design. Due to a hydraulic problem, the machine was

not delivered until March 4, 1997. Plaintiff claims that the machine failed to work properly from the first day of operation, as the rocks were not falling into the proper slots. The Donaghy affidavit states that the first day of operation of the machine did not occur until on or about June 20, 1997, after a Cummins engine had been installed in substitution for the original Ford engine and that Boyas did not report problems with the conveyor system until June 27, 1997.

Boyas sought to have the machine repaired by Powerscreen of Ohio and placed in successful operation. While efforts at developing a plan to remedy the machine's operational defects were going on, Boyas claims that it had to engage extra personnel and equipment to otherwise handle the unsorted rock in a manner that added to its cost of operation. Boyas claims that as the weeks went by and the machine remained unrepaired, there was a steady increase in the volume of unsorted rock that had to be handled in this fashion.

The machine was successfully repaired when Simplicity added chutes instead of conveyors to the exit mechanism. When the machine finally became operational on September 11, 1997, Boyas claims that it was forced to rehandle the stockpiled rock. Boyas claims the additional cost of labor and equipment as damages for the period in which the machine remained unrepaired. Apparently Boyas used the machine successfully from September 11, 1997 to May 1999, when it sold it for $115,000.

Boyas brought suit on August 7, 1997, against Powerscreen of Ohio. On February 20, 1998, Boyas filed a first amended complaint adding new defendants Powerscreen International, Ltd., Powerscreen USA, LLC, and Simplicity Engineering, Inc., n.k.a. Powerscreen, USA, LLC.

Finally, after discovery, a second amended complaint was filed on September 22, 1998, naming Superior Equipment, a division of new defendant Superior Industries ("Superior"). In its answer to plaintiff's second amended complaint, Powerscreen of Ohio filed cross-claims against the other defendants, alleging they were involved in the transaction that formed the basis of the Boyas claims.

On April 6, 1999, defendants filed their motions for summary judgment. The defendants claimed that they had honored their limited warranty to repair and replace, that Boyas could not recover indirect economic losses in tort, and that the sales order contract limited such remedies by excluding consequential damages of the kind claimed. Both Pete and Michael Boyas in their opposition affidavits averred that they "depend[ed] upon the skill and expertise" of defendants' representatives "for [the Rip–Rap machine] design and manufacture * * *." One design element of the Rip–Rap machine was the subsequent installation of conveyors on it by Superior. In the affidavit of Superior's CEO, he averred that "James Butler of Simplicity gave specific instructions to Superior that we install conveyors on Simplicity's rip-rap plant, instead of chutes, and that

we construct a chassis which would accommodate three discharge conveyors * * *." Boyas contends that this incorrect decision (conveyors rather than chutes) was unilaterally and erroneously made by defendants' personnel without any input from Boyas. Boyas denied prior knowledge of the relationships and roles that the defendants played in the design or manufacture of the machine.

Boyas claimed that the defendants' respective and/or collective mistakes in performing the contract and their delayed response to Boyas's predicament resulted in an improperly designed, manufactured, and delivered machine. Boyas claimed that the Rip–Rap machine's customized design, as ordered, formed an express warranty of design that could not be disclaimed as a matter of law by the small print on the back of the sales order. Boyas points out that the affidavits filed by the parties reveal that there is a critical issue as to who requested and approved the exact design specifications of the Rip–Rap machine that resulted in the performance failure. The trial court entered summary judgment for all the defendants on July 28, 1999, without opinion or explanation of its ruling. This timely appeal ensued.

Boyas's assignments of error state as follows:

"I. The trial court erred in granting defendants' motions for summary judgment, because material issues of fact still remain in dispute.

"II. The trial court erred in granting defendants' motion for summary judgment, because defendants individually and/or collectively breached express warranties which could not be disclaimed under Ohio statutory law.

"III. The trial court erred in granting defendants' motions for summary judgment, because plaintiff was deprived of the full benefit of its bargain."

These assignments of error will be treated together because they all partake of common questions of law and fact.

■ Appellate review of summary judgments is *de novo*. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241, 244–245; *Zemcik v. LaPine Truck Sales & Equip. Co.* (1998), 124 Ohio App.3d 581, 585, 706 N.E.2d 860, 863–864. The Ohio Supreme Court recently restated the appropriate test in *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201, 204, as follows:

"Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus.

The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264, 273–274."

■ Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197, 1199. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, 139–141.

We will first address the issues as they pertain to the plaintiff's claims against Powerscreen of Ohio, since that is the party with which Boyas had the contract. We note, as clarified at oral argument, that plaintiff's claim involves the damages incurred during the six-month period it took defendants to repair the machine. Plaintiff's counsel conceded at oral argument that it is not claiming damages for the delayed original delivery or the fact that the equipment contained a Ford engine rather than a Cummins engine.

As our review of the facts indicates, Powerscreen of Ohio is an authorized dealer of various Powerscreen products. It acted as the middleman in ordering the machine on behalf of Boyas from Simplicity. We find that there is evidence, if believed, that in arriving at the specifications necessary to make the machine fit the plaintiff's needs, Powerscreen of Ohio made express representations to plaintiff that the machine could perform the Kiewit job and separate the rock effectively, and that the conveyor belt would not inhibit the performance. Peter Boyas, the President of Boyas Excavating, Inc., stated in his affidavit attached to his opposition to the defendants' motions for summary judgment as follows:

"4. The affiant is alternatively aware of or participated directly in the negotiations with Powerscreen personnel, such discussions involved bringing Powerscreen representatives to Boyas' Valley View quarrying site to demonstrate the type of rock Boyas was quarrying and to specify the need for the mobile Rip–Rap machine to separate Boyas' overburden stone into four distinct sizes, conforming with ODOT specifications;

"5. That as further part of the business transaction between Boyas and Powerscreen, affiant and his son Mike Boyas personally accompanied Powerscreen representatives to a quarrying site in Michigan, where a similar Rip–Rap machine was operating and was demonstrated to affiant and Mike Boyas as an example of the machine they needed to be capable of performing the work Boyas specified;

"6. That as further part of the transaction of business with Powerscreen representatives, affiant and/or Mike Boyas advised Powerscreen representatives of their belief that certain design modifications to the 'grizzly bars', which affiant understood was to result in a 'step down' feature capable of handling Boyas rock, was both communicated to and accepted by Powerscreen personnel as an appropriate modification to the Rip–Rap machine;

"7. That to affiant's knowledge, such design specifications suggested by Boyas, as well as other features of the Rip–Rap machine communicated to affiant, were handled by Powerscreen, which represented itself as having the expertise to do so;

"* * *

"9. As a direct consequence of the various discussions, representations and demonstrations of the Rip–Rap machine made between affiant, Michael Boyas and Powerscreen representatives and based upon affiant's firsthand knowledge of the same, affiant authorized Michael Boyas to execute the purchase invoice for the Powerscreen Rip–Rap machine;

"10. That to affiant's firsthand knowledge and understanding, Powerscreen representatives fully understood the specific purpose and importance of the Rip–Rap machine for use in Boyas' Kiewit project, and for which time was of the essence in delivering said machine;

"11. That the Rip–Rap machine was not delivered in a timely fashion and, furthermore, the first time Boyas attempted to operate it to perform the necessary sorting task, it failed to function immediately."

Michael Boyas, Vice President of Boyas Excavating, corroborated the same statements made by Peter Boyas above and also stated in his affidavit:

"9. That per his authority as vice president and through the authority of Peter Boyas, affiant signed the billing invoice, fully believing the discussions affiant and Pete Boyas had had with Powerscreen representatives, as well as depending upon the skill and expertise for its design and manufacture, would result in a mobile Rip–Rap machine capable of handling Boyas' specific needs; and further, it was based upon such understanding, belief and reliance that affiant agreed to purchase the machine at the stated price."

We find that these statements in the Boyases' affidavits are sufficient to establish express warranties made by Powerscreen of Ohio. Although Power-screen of Ohio alleges that Boyas failed to plead in its complaint a claim of breach of an express warranty, we find the facts as pled in the second amended complaint support such a claim. As the Ohio Supreme Court held in *Illinois*

*Controls, Inc. v. Langham* (1994), 70 Ohio St.3d 512, 639 N.E.2d 771, paragraph six of the syllabus:

"Civ.R. 8(A) requires only that a pleading contain a short and plain statement of the circumstances entitling a party to relief. A party is not required to plead the legal theory of recovery or consequences which naturally flow by operation of law from the legal relationship of the parties."

The plaintiff in the case herein alleged in its complaint in pertinent part as follows:

"7. Defendants represented that the machine was fit for the intended purpose of Plaintiff for separating rock in four categories, ranging from four inches to sixteen inches, and Defendant knew that Plaintiff was relying on Defendant's skill to furnish a suitable machine for that purpose.

"* * *

"10. The machine was represented as being capable of processing a 4,000 pound rock, but failed to fulfill that purpose and has never worked properly or as intended."

We find that the facts pled and alleged in the affidavits adequately support plaintiff's claim, at least for summary judgment purposes, that Powerscreen of Ohio breached its express warranty that the Rip–Rap machine could perform the functions required of the Kiewit job. As R.C. 1302.26 states:

"(A) Express warranties by the seller are created as follows:

"(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

"(2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."

In the instant case, Boyas claims that it went to great lengths to ensure that it would receive a Rip–Rap machine capable of sorting the rock in the manner prescribed. Representatives of Powerscreen of Ohio visited the quarry to study the operation. Boyas's officers in turn visited a prototype machine in Michigan. Boyas claims that it relied on Powerscreen's expertise to supply a machine that was capable of separating Boyas's stone into four distinct sizes and operating on their site for the rock shown to exist there. There is evidence to support that claim.

We agree with Powerscreen of Ohio that in evaluating the alleged breach of the express warranty, we must also address the limited warranties and damage exclusions contained on the reverse side of the sales order that forms the contract

between the parties. In particular, we must give attention to the repair and replacement warranty, since all parties agree that eventually the machine was successfully repaired and put into useful operation. The reverse side of the sales order contained preprinted terms entitled "STANDARD CONDITIONS OF SALE," which stated:

"5. The Company shall repair any equipment or parts thereof supplied by the Company and which shall be shown to the satisfaction of the Company, to have been defective in workmanship or material provided:

"* * *

"6. The Company will transmit to the customer, insofar as it is possible for the Company to do, the benefits or guarantees given to the Company by the manufacturers of any part or machine and the liability of the Company shall be limited to those benefits or guarantees which have been given by those manufacturers.

"7. The Warranty herein set forth is in lieu of, and excludes all other conditions, guarantees or warranties, expressed or implied, statutory or otherwise.

"8. In no event will the Company be liable for any loss, injury or damage, howsoever arising, except as herein set forth, and shall not in any account be liable for consequential loss or damage howsoever caused or arising from stoppage or break-down of the machinery or any part thereof and shall not be liable in any other way for the performance of the machinery in operation."

As previously noted, on December 18, 1996, Powerscreen of Ohio ordered the machine from Simplicity, which designed and manufactured the grizzly bar feeder. On January 11, 1997, Simplicity transmitted its written acknowledgment of the Powerscreen of Ohio purchase order. Included on the reverse side of this sales acknowledgment were the terms and conditions of the sale between Powerscreen of Ohio and Simplicity, which stated:

"SOLE AND EXCLUSIVE WARRANTY: Simplicity warrants to Purchaser that the goods manufactured by Simplicity to be delivered to Purchaser will be free from defects in material and workmanship when used under proper and normal use (the meaning of which shall include without limitation operation for not greater than an average of 40 hours per week) for a period of one (1) year on new machines or thirty (30) day period and confirmation that the goods have been stored, installed, operated and maintained in accordance with standard industry practice, to correct the non-conformity at Simplicity's option either by repairing any defective parts or by making available at Simplicity's plant a repaired or replacement part. THE FOREGOING WARRANTY SHALL NOT APPLY TO DAMAGE OR DEFECTS CAUSED BY ORDINARY WEAR AND TEAR AND

IS EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES WHETHER WRITTEN, ORAL OR IMPLIED INCLUDING ANY WARRANTY ON MERCHANTABILITY OR FITNESS FOR PURPOSE. THE REMEDIES UNDER THIS WARRANTY ARE EXCLUSIVE AND SIMPLICITY NEITHER ASSUMES NOR AUTHORIZES ANYONE TO ASSUME FOR IT ANY OTHER OBLIGATION."

Powerscreen of Ohio alleges that as a result of the aforesaid limited warranties it was not liable for any consequential loss suffered by plaintiff and that plaintiff's remedies were exclusively limited to the repair of the machine, which was successfully accomplished.

■ We find that when there is privity of contract between the parties, as we have here between plaintiff Boyas and Powerscreen of Ohio, consequential damages cannot be excluded by a limited repair and replacement warranty if that warranty fails of its essential purpose. The Ohio Supreme Court addressed this issue in *Chemtrol Adhesives, Inc. v. Am. Manufacturers Mut. Ins. Co.* (1989), 42 Ohio St.3d 40, 55–56, 537 N.E.2d 624, 639:

"* * * Lexington cites two decisions to support its argument that the limitation-of-liability provision causes the remedy to fail of its essential purpose: *McCullough v. Bill Swad Chrysler–Plymouth, Inc.* (1983), 5 Ohio St.3d 181, 5 OBR 398, 449 N.E.2d 1289, and *Goddard v. General Motors Corp.* (1979), 60 Ohio St.2d 41, 14 O.O.3d 203, 396 N.E.2d 761. However, as Midland–Ross correctly notes, the plaintiffs therein attempted to avail themselves of the repair and/or replacement remedy and were completely frustrated. See *McCullough, supra,* at 181–182, 5 OBR at 399–400, 449 N.E.2d at 1291; *Goddard, supra,* at 42–43, 14 O.O.3d at 203–204, 396 N.E.2d at 762–763. " 'Repair or replacement' remedies were designed 'to give the seller an opportunity to make the goods conforming while limiting the risks to which he is subject by excluding direct and consequential damages that might otherwise arise.' *Beal v. General Motors Corp.* (D.Del. 1973), 354 F.Supp. 423, 426. Such limited remedies generally fail only where the seller is unable or unwilling to make repairs within a reasonable time. See, e.g. *Clark v. Internatl. Harvester Co., supra,* at 340, 581 P.2d at 798–799. See, generally, Eddy, On the 'Essential' Purposes of Limited Remedies: The Metaphysics of UCC Section 2–719(2) (1977), 65 Calif.L.Rev. 28, 58–84. We note that the determination of whether a warranty has failed to fulfill its essential purpose is ordinarily a question of fact for the jury. *Cayuga Harvester, Inc. v. Allis–Chalmers Corp.* (1983), 95 App.Div.2d 5, 465 N.Y.S.2d 606; *Johnson v. John Deere Co.* (S.D.1981), 306 N.W.2d 231." See, also, *Goddard v. Gen. Motors Corp.* (1979), 60 Ohio St.2d 41, 46, 14 O.O.3d 203, 206, 396 N.E.2d 761, 764, where the Ohio Supreme Court, quoting *Clark v. Internat. Harvester Co.* (1978), 99 Idaho 326, 581 P.2d 784, held:

" 'The purpose of the exclusive repair or replacement remedy is to ensure that the purchaser receives a product which conforms to the express warranty, *i.e.* that the product is free from defects, and if the product proves defective within the warranty period the seller is obligated to cure the defect within a reasonable time. * * * [Citations omitted.] If, however, the seller is subsequently unable or unwilling to repair or replace a defective part within a reasonable time, the buyer is left with a defective product—not conforming to the warranty—and the limited remedy has not achieved its purpose.' "

■ In the instant case, we find that there is an issue of fact as to whether the limited repair and replacement warranty failed of its essential purpose at least for the period of time it may have unreasonably taken to effect the cure. In their affidavits, the Boyases stated as follows:

"12. That from the point of the machine's breakdown, either affiant himself, affiant's son Michael, or other Boyas personnel with affiant's knowledge and/or authority endeavored to have the problem immediately corrected by Powerscreen personnel, but that Powerscreen alternatively failed to respond timely, then at the point of response failed timely to correct the problem, at one point even working on the wrong machine, and that Boyas incurred substantial costs in utilizing alternative equipment and personnel to handle the overburden rock in a manner that was not contemplated when Boyas negotiated for and agreed to purchase the Rip–Rap machine and was directly caused by the failure [of] Powerscreen to deliver a functioning Rip–Rap machine capable of doing the work Boyas had contracted for."

This statement in both affidavits was sufficient to create a genuine issue of fact regarding whether the machine was repaired within a reasonable time. Whether six months to make this machine operational was reasonable under all the circumstances is, we believe, a question for the jury. It may very well be that the limitation of damages is effective at least for the reasonable period of time it took to make the repairs. To the extent the period of time was unreasonable (*i.e.,* too long) the repair and replacement warranty may have failed of its essential purpose.

We intimate no disposition on this record as to what appear to be disputed issues of fact, viz., who was ultimately responsible for specifying conveyors rather than chutes; when did Boyas first put the machine in operation and/or notify Powerscreen of Ohio of inoperability; and what was a reasonable period for repair? On the present record, these issues call for a jury determination, not summary judgment.

As the issues pertain to the remaining defendants, we find that plaintiff's direct claims fail for the reasons hereinafter stated. After plaintiff Boyas contracted

with Powerscreen of Ohio for the design and manufacture of the Rip–Rap machine, Powerscreen of Ohio contracted with Simplicity to manufacture the machine. Simplicity in turn ordered the chassis and conveyor-belt mechanism from Superior, which later assembled this part once Simplicity was done with the grizzly bar or the top portion of the machine. Therefore, only Powerscreen of Ohio had any direct contractual relationship with Boyas.

■ Since there was no privity between Boyas and the other defendants, it could only proceed against them based on tort theories, *i.e.*, in negligence or for breach of implied warranty. In considering those theories, we must acknowledge the difference between direct and indirect economic loss recognized by the Supreme Court of Ohio. " 'Direct' economic loss includes the loss attributable to the decreased value of the property itself * * *. 'Indirect' economic loss includes the consequential losses sustained, which may include the value of production time lost and the resulting lost profits." *Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.* (1995), 73 Ohio St.3d 609, 614, 653 N.E.2d 661, 667, citing *Chemtrol.* "In order to recover indirect economic damages in a negligence action, the plaintiff must prove that the indirect economic damages arose from tangible physical injury to persons or from tangible property damage." *Id.* at syllabus.

■ The damages that Boyas claims are consequential loss rather than the diminished value of the Rip-Rap machine. As such, they are indirect economic loss. In order to recover on a tort theory from the remaining defendants, Boyas would have to show that the indirect economic damages arose from property damage or personal injury. *Id.* at 615, 653 N.E.2d at 667–668. This it cannot do. Because plaintiff is alleging only indirect economic damages, it cannot proceed on the implied warranty theory against the remaining defendants. See, also, *Sun Refining Co. v. Crosby Valve* (1994), 68 Ohio St.3d 397, 399, 627 N.E.2d 552, 554, in which the Supreme Court held: "The character of the loss determines whether a commercial party may recover in tort. If the loss is an economic one, a cause of action will lie only in contract." *Id.* at 399, 627 N.E.2d at 554. In the case herein, there is no privity between the plaintiff and remaining defendants, and the damage claimed is indirect economic loss. Therefore, it cannot proceed against those defendants in tort or contract.

We therefore find that summary judgment in favor of defendants Powerscreen International, Powerscreen, USA, d.b.a. Simplicity, and Superior was appropriate. However, this does not affect any third-party claims that Powerscreen of Ohio may have against Simplicity for indemnification if there was a failure to timely repair. Powerscreen of Ohio has an express contract with Simplicity. Likewise, the same would apply to any claim for indemnity that Simplicity may have had with Superior Products. We make no ruling on the merits of such claims. We

are merely holding that plaintiff cannot proceed directly against these remaining defendants and that summary judgment was proper on plaintiff Boyas's claims against the remaining defendants.

Given the foregoing discussion, we sustain the assignments of error as they pertain to Powerscreen of Ohio and overrule them as to the remaining defendants.

Judgment reversed and remanded in part; affirmed in part.

*Judgment accordingly.*

ROCCO, P.J., and MICHAEL J. CORRIGAN, J., concur.