JEFFREY MINING PRODUCTS, L.P., Appellee,

v.

LEFT FORK MINING COMPANY, Defendant/Third–Party Plaintiff–Appellant; Global Industrial Technologies, Inc. et al., Appellees; TMPSC, Inc., Third Party Defendant-Appellee.

[Cite as *Jeffrey Mining Prod., L.P. v. Left Fork Mining Co.* (2001), 143 Ohio App.3d 708.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 77583.

Decided June 4, 2001.

*Kahn, Kleinman, Yanowitz & Arnson, Michael H. Diamant, Stuart L. Larsen* and *Howard G. Strain,* for plaintiff-appellee Jeffrey Mining Products, L.P.

*Getty, Keyser & Mayo, LLP, Richard A. Getty, C. Thomas Ezzell* and *Matthew R.A. Heiman; L. Stewart Hastings, Jr.,* for defendant-appellant Left Fork Mining Co., Inc.

*Vorys, Sater, Seymour & Pease, W. Breck Weigel* and *Brent C. Taggert,* for defendant-third party defendants-appellees Global Industrial Technologies, Inc., Harbison–Walker Refractories Co., Inc., and TMPSC, Inc.

---

KENNETH A. ROCCO, Judge.

This case is before the court on appeal from a decision of the common pleas court to grant summary judgment against defendant-appellant Left Fork Mining Company ("Left Fork") on its counterclaim against plaintiff Jeffrey Mining Products, L.P. ("Jeffrey"), its cross-claims against codefendants Global Industrial Technologies, Inc. ("Global") and Harbison–Walker Refractories Co., Inc. ("Harbison–Walker"), and its third-party claim against TMPSC, Inc. ("TMPSC"). In the three assignments of error set forth in the attached appendix, Left Fork urges that the court erred by granting summary judgment on its claims and by prohibiting Left Fork from filing additional papers that would have proved its claims and preserved the record for appellate review. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Jeffrey filed its complaint in this case on June 25, 1997 and amended the complaint on June 27, 1997, before any answers were filed. The amended complaint demanded a declaratory judgment that Jeffrey had performed all of its obligations to Left Fork under a sales contract dated August 29, 1994. Count two alleged that Left Fork owed Jeffrey $10,426.53 for parts and services and demanded judgment for that amount. Left Fork answered February 12, 1998, and asserted a counterclaim against Jeffrey, cross-claims against codefendants Global and Harbison–Walker, and third-party claims against TMPSC. Left Fork amended this pleading on November 6, 1998.

In its amended pleading, Left Fork alleged that on or about August 31, 1994, Harbison–Walker's predecessor, Indresco, agreed to sell Left Fork four 102HHP continuous miner/94L bridge conveyor/506C bridge carrier mining systems for $3,560,000. All four mining systems were delivered to Left Fork's Little Creek mine in Kentucky by May 1995. Two of the systems were installed and placed in operation in February and March 1995. A third was installed in November 1995. The fourth was never installed at Little Creek; it was placed at one of Left Fork's affiliates on a trial basis in July 1996 and was found to be defective. All four were taken out of service by August 1996.

Indresco sold its mining division to Jeffrey in October 1995, and Jeffrey assumed Indresco's rights and obligations under its contract with Left Fork. Indresco was later reorganized; Harbison–Walker is its successor. Harbison–Walker is a wholly owned subsidiary of Global. TMPSC (formerly a division of Indresco) is also a Global subsidiary.

Left Fork's amended pleading claimed that all of the other parties breached express and implied warranties by delivering equipment that was improperly designed and manufactured and that was assembled from defective parts and substandard materials. It further claimed that Global and Indresco induced it to purchase the equipment through false representations. Third, Left Fork asserted that the defendants fraudulently induced it to purchase by failing to disclose known design defects, quality-control problems at its manufacturing and assembly plants, and other internal problems. Count four alleged that the mining equipment was negligently designed, manufactured, repaired, and maintained, while count five claimed spoliation of evidence.

On August 27, 1998, before Left Fork filed its amended counterclaim, cross-claim, and third-party complaint, Jeffrey moved for summary judgment on the counterclaim against it. The court granted this motion in part on January 26, 1999, awarding judgment to Jeffrey on Left Fork's fraud claims and the breach of warranty and negligence claims as to the design and manufacture of the mining system. The court also granted summary judgment to Jeffrey as to Left Fork's claims for incidental and consequential damages. However, the court found a genuine issue as to whether Jeffrey performed its obligations to repair and maintain the mining system. The spoliation claim was not addressed in the motion.

On August 30, 1999, Jeffrey moved for summary judgment on the claims remaining against it. Global, Harbison–Walker, and TMPSC all moved for summary judgment as well. On January 3, 2000, the court granted Global, Harbison Walker, and TMPSC's motion with respect to Left Fork's claim for consequential and incidental damages. On January 5, 2000, the court granted the remainder of the summary judgment motions, thus granting judgment for the

defendants on all the counterclaims, cross-claims, and third-party claims.[1] The January 5 entry noted that a memorandum of opinion would follow.

On February 16, 2000, the court filed an opinion regarding its rulings on the summary judgment motions. The court found that the parties' contract contained a provision that barred liability for consequential and incidental damages. The court determined that this provision was enforceable, precluding Left Fork's breach-of-warranty claims. The court also found that Indresco had no duty to disclose the potential sale of its mining division or its poor financial condition to Left Fork, so the claim for fraudulent nondisclosure also failed. Furthermore, the claims for fraud, negligence, and breach of warranty were all barred by the contractual statute of limitations requiring all claims to be brought within one year from the accrual of the cause of action. The court found that Left Fork's claim for spoliation of evidence failed because the claims to which that evidence related were time-barred. Finally, the court found that Global and TMPSC did not assume liabilities from Indresco and, therefore, had no duties to Left Fork.

This appeal was timely filed.

## FACTUAL BACKGROUND

The parties relate the factual history of their relationship and the current dispute in considerable detail, but the facts material to resolution of this case are few. On August 29, 1994, Indresco submitted a proposal to Left Fork for the sale of four mining systems for a total price of $3,560,000. The proposal contained the following provisions:

"*TERMS OF SALE*

"This proposal is subject to and conditioned upon Seller's standard terms of sale contained on the reverse side hereof. Your attention is particularly directed to the WARRANTY AND LIMITATION OF LIABILITY clause. * * * *

"*ACCEPTANCE AND EXECUTION*

"The foregoing proposal, although accepted in writing by Buyer, shall not become a contract and be binding upon Seller unless and until accepted and approved in writing by a duly authorized representative of Seller at Columbus,

---

1. The trial court's half-sheet entry of January 5, 2000, noted that this was a partial disposition and stated "No just cause for delay." This court granted Left Fork leave to ask the common pleas court to clarify its ruling regarding the finality of its orders. In response to the motion that Left Fork filed on March 27, 2000, the trial court entered the following half-sheet entry on June 23, 2000:

    "Pursuant to Civ.R. 54(B), the court makes a finding that there is no just cause for delay as to the following entries: journal entry entered on 1/26/99 and journalized at vol. 2302 pg. 420–22; journal entry entered on 1/3/00 and journalized at vol. 2415 pg. 127; and journal entry entered on 1/5/00 and journalized at vol. 2417 pg. 77."

Ohio. If so accepted and approved by Seller, this proposal shall become and constitute the entire contract between the parties; * * *."

The standard terms of sale included the following provision:

"5. WARRANTY AND LIMITATION OF REMEDY AND LIABILITY

"A. Seller warrants only that its products, when shipped and for six (6) months thereafter, will be free from defects in material and workmanship. All claims under this warranty must be made in writing immediately upon discovery but within thirty days of discovery and, in any event, within seven (7) months from shipment of the applicable product. Defective and nonconforming items must be held for Seller's inspection and returned to the original f.o.b. point upon request. THE FOREGOING IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES WHATSOEVER, EXPRESS, IMPLIED AND STATUTORY, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTIES OR [sic] MERCHANTABILITY AND FITNESS.

"B. Upon Buyer's submission of a claim as provided above and its substantiation, Seller shall at its option either (i) repair or replace its product at the original f.o.b. point or (ii) refund an equitable portion of the purchase price.

"C. THE FOREGOING IS SELLER'S ONLY OBLIGATION AND BUYER'S EXCLUSIVE REMEDY FOR BREACH OF WARRANTY AND, EXCEPT FOR GROSS NEGLIGENCE, WILLFUL MISCONDUCT AND REMEDIES PERMITTED UNDER THE PERFORMANCE INSPECTION AND ACCEPTANCE AND THE PATENTS CLAUSES HEREOF, THE FOREGOING IS BUYER'S EXCLUSIVE REMEDY AGAINST SELLER FOR ALL CLAIMS ARISING HEREUNDER OR RELATING HERETO WHETHER SUCH CLAIMS ARE BASED ON BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE AND STRICT LIABILITY) OR OTHER THEORIES. BUYER'S FAILURE TO SUBMIT A CLAIM AS PROVIDED ABOVE SHALL SPECIFICALLY WAIVE ALL CLAIMS FOR DAMAGES OR OTHER RELIEF, INCLUDING BUT NOT LIMITED TO CLAIMS BASED ON LATENT DEFECTS. IN NO EVENT SHALL BUYER BE ENTITLED TO INCIDENTAL OR CONSEQUENTIAL DAMAGES. ANY ACTION BY BUYER ARISING HEREUNDER OR RELATING HERETO, WHETHER BASED ON BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE AND STRICT LIABILITY) OR OTHER THEORIES, MUST BE COMMENCED WITHIN ONE (1) YEAR AFTER THE CAUSE OF ACTION ACCRUES OR IT SHALL BE BARRED."

This proposal was accepted by Left Fork on August 31, 1994.

## LAW AND ANALYSIS

### A. Summary Judgment

Left Fork's first two assignments of error challenge the court's orders granting summary judgment and will therefore be addressed together. We review the trial court's ruling on summary judgment *de novo,* applying the same standard the trial court was required to apply. *Hillyer v. State Farm Mut. Auto. Ins. Co.* (1999), 131 Ohio App.3d 172, 175, 722 N.E.2d 108, 110; *Weiland v. Benton* (1996), 108 Ohio App.3d 512, 518, 671 N.E.2d 295, 298–299.

### Identification of Issues

Although Left Fork has appealed all of the orders granting summary judgment, its arguments do not address all of the trial court's rulings; therefore, it will be helpful to identify those rulings that Left Fork does *not* challenge in this appeal. First, Left Fork does not challenge the trial court's determination that Global and TMPSC never assumed any liabilities from Indresco and were not parties to the sales agreement and, therefore, owed no duties to Left Fork in contract or in tort. Accordingly, we affirm the judgment in favor of Global and TMPSC on all counts except the claim for spoliation of evidence, which we will address later in this opinion.

Left Fork also does not challenge the trial court's determination that Jeffrey is not liable for breach of warranty or negligence with respect to the design and manufacture of the mining systems or for fraudulent misrepresentations or omissions inducing Left Fork's purchase of the mining systems.[2] These judgments are also affirmed.

The only claims at issue here are Left Fork's claims that (a) Jeffrey breached warranties and/or was negligent with respect to the repair and maintenance of the mining systems, (b) Indresco, now Harbison–Walker, fraudulently induced Left Fork to purchase the mining systems through misrepresentations and omissions, (c) Indresco (now Harbison Walker) breached warranties and/or was negligent with respect to the design, manufacture, repair and maintenance of the mining systems, and (d) all defendants spoliated evidence.

In connection with these claims, Left Fork does not challenge the trial court's construction and application of the terms of the sales contract. Instead, Left Fork urges that there are genuine issues whether the contractual limitations upon which the court based its decision are enforceable. Therefore, if we

---

**2.** The trial court did not explain the basis for these rulings, but they were premised on a summary judgment motion that asserted, among other things, that Jeffrey could not be liable on these claims because it did not exist at the time the alleged misconduct took place and did not assume liability for these types of claims from Indresco.

conclude that there is no genuine issue as to the enforceability of these provisions, Left Fork's claims are barred by them.

### Fraudulent Inducement

First, Left Fork asserts that there was a genuine issue whether it was fraudulently induced to enter into the sales contract. Left Fork argues that the law of Kentucky should be applied to this tort claim, rather than the law of Ohio. It asserts that the alleged fraudulent inducement prevented the trial court from applying the terms of the sales contract to bar Left Fork's claims as untimely "because Kentucky has consistently recognized that fraudulent inducement and omission surrounding execution of a contract are grounds to avoid the provisions of the contract."

██ Under both Kentucky and Ohio law, a party who has been fraudulently induced to enter into a contract may elect among two possible remedies: the party may either rescind the contract or retain what he or she has obtained pursuant to the contract and bring an action to recover damages for the injury sustained as a result of the deceit. See *Hanson v. Am. Natl. Bank & Trust Co.* (Ky.1993), 865 S.W.2d 302, 306; *Mid–America Acceptance Co. v. Lightle* (1989), 63 Ohio App.3d 590, 599, 579 N.E.2d 721, 727. An election must be made because it is inconsistent to rescind the contract yet retain the benefits of it.

In this appeal, Left Fork seeks both to rescind the sales contract and to obtain damages for the alleged fraud: It asks the court to void the contract to the extent that it imposes a limitations period, yet leave the contract in place so that it can recover consequential damages for the alleged fraud. These remedies are inconsistent[3] with each other; Left Fork must choose one or the other.

██ In the action below, Left Fork elected to accept the contract and seek damages for the alleged fraud. Its counterclaim, cross-claim, and third-party complaint sought compensatory and punitive damages for the alleged fraudulent inducement; it did not seek to rescind the sales contract.[4] Having elected to accept the contract and to seek damages, Left Fork is bound by the terms of the contract, including the one-year limitation period that the court found to bar its fraudulent inducement claims here.

---

3. While damages could be awarded on rescission, they would be limited to a return of any consideration paid and would not include consequential damages caused by the alleged fraud.

4. Left Fork did demand rescission in connection with its claim for breach of warranty. That claim specifically alleged that "the limitations of remedies provision of the Sales Contract failed of its essential purpose and is unconscionable and therefore unenforceable." This contention is discussed below.

## Failure of Essential Purpose

Next, Left Fork claims that the sales contract failed of its essential purpose so that its terms are unenforceable. A limitation of remedies clause may be rendered unenforceable if it fails of its essential purpose. See, *e.g., Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.* (1989), 42 Ohio St.3d 40, 55–56, 537 N.E.2d 624, 638–640; *Boyas v. Powerscreen of Ohio, Inc.* (2000), 139 Ohio App.3d 201, 743 N.E.2d 464. A contractual provision limiting the buyer's remedies to repair or replacement of a defective product is intended to give the seller an opportunity to make the goods conform while limiting the seller's risk by excluding liability for direct and consequential damages. Such a provision may fail of its essential purpose where "the seller is unable or unwilling to make repairs within a reasonable time." *Chemtrol,* 42 Ohio St.3d at 56, 537 N.E.2d at 639.

A failure of the essential purpose of a limitation-of-remedies clause would void only the contractual limit on the kind of damages Left Fork could recover. It would have no effect on the enforceability of the one-year contractual time limit for bringing suit. Thus, even if we were to accept Left Fork's argument that the limitation-of-remedies clause failed of its essential purpose, Left Fork would still be precluded from pursuing its claims for fraudulent inducement, breach of warranty, and negligence by the one-year contractual time limit for filing suit.

## Bad Faith

Left Fork contends that there is a genuine issue of material fact with respect to whether Indresco acted in good faith in its negotiations with Left Fork, as required by R.C. 1301.09. It urges that this "bad faith" precludes enforcement of the sales contract's limitations against the recovery of consequential and incidental damages.

Even if we were to accept Left Fork's argument that there was a genuine issue of fact as to Indresco's good faith, that fact would not be material to the outcome of this case. Left Fork claims only that Indresco's bad faith might preclude enforcement of the damages limitations provision; it does not argue that it would affect the one-year limitations period. As the court found that all claims except the spoliation claim were precluded by this one-year limitations provision, Indresco's good faith in negotiating the damages limitation is not material.

## Unconscionability

Left Fork argues that the entire sales contract is unconscionable and unenforceable because, "[a]t the time of the sale, Left Fork was unaware of the numerous material and persistent defects with the [mining systems]." This

argument is a *non sequitur*, as it does not address any element of the unconscionability doctrine.

Unconscionability is a question of law. *Ins. Co. of N. Am. v. Automatic Sprinkler Corp.* (1981), 67 Ohio St.2d 91, 21 O.O.3d 58, 423 N.E.2d 151. The unconscionability doctrine consists of two prongs: "(1) substantive unconscionability, *i.e.*, unfair and unreasonable contract terms, and (2) procedural unconscionability, *i.e.*, individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible." *Dorsey v. Contemporary Obstetrics & Gynecology, Inc.* (1996), 113 Ohio App.3d 75, 80, 680 N.E.2d 240, 243. Both elements must be present to find a contract unconscionable. *Collins v. Click Camera & Video, Inc.* (1993), 86 Ohio App.3d 826, 834, 621 N.E.2d 1294, 1299.

Substantive unconscionability involves factors relating to the contract terms themselves and whether they are commercially reasonable. *Dorsey*, 113 Ohio App.3d at 80, 680 N.E.2d at 243. Procedural unconscionability involves factors bearing on the parties' relative bargaining position, *e.g.*, "age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, whether there were alternative sources of supply for the goods in question." *Collins*, 86 Ohio App.3d at 834, 621 N.E.2d at 1299.

Left Fork does not argue that any of the contract terms were unfair or unreasonable. Its allegation that it lacked knowledge of certain facts at the time the contract was entered into does not assert any procedural unconscionability; therefore, it has failed to demonstrate a genuine issue as to either element of unconscionability.

## Spoliation

Left Fork contends that the summary judgment on its claim for spoliation of evidence should be reversed because it has demonstrated a genuine issue of fact on the claims to which the destroyed evidence related. As noted above, however, each of Left Fork's other claims is barred because of the one-year contractual limitations period. Left Fork cannot demonstrate any prejudice from the destruction of evidence, so its spoliation claim must fail as a matter of law. Cf. *Smith v. Howard Johnson Co., Inc.* (1993), 67 Ohio St.3d 28, 615 N.E.2d 1037 (describing elements of spoliation claim).

## Conclusion

Left Fork has failed to demonstrate that there is any genuine issue as to the enforceability of the contractual limitations clause. Because Left Fork's claims for fraud, breach of warranty, and negligence are all barred by this provision, Left Fork's other arguments are not material to the outcome of this case. We find that the trial court did not err by granting summary judgment for Jeffrey, Global, Harbison–Walker, and TMPSC on all of Left Fork's claims. Therefore, we affirm these judgments.

### B. Denial of Permission to File Additional Papers

Left Fork's third assignment of error contends that the trial court abused its discretion by disallowing its request for leave to file additional documents relating to its fraudulent inducement claim. The trial court's prohibition against filings without permission is highly suspect because it potentially interferes with the parties' due process rights. However, Left Fork was not harmed by the court's ruling in this instance. The fraudulent inducement claim was barred on limitations grounds, so the additional documents Left Fork sought to introduce could not have affected the outcome of that claim.

Accordingly, we affirm the trial court's judgment.

*Judgment affirmed.*

TIMOTHY E. MCMONAGLE, P.J., and COLLEEN CONWAY COONEY, J., concur.

### APPENDIX

#### Assignments of Error

"I. The trial court erroneously granted summary judgment in favor of the appellee, Jeffrey Mining Products, L.P. ('JMP'), on left Fork Mining Company, Inc.'s ('Left Fork') claims for JMP's breach of its warranty obligations; negligence arising from JMP's failure to offer adequate repair services, to provide repair services in a timely fashion, and its failure to provide qualified personnel to perform these repair services on mining equipment despite the presence of genuine issues of material fact on each of the [*sic*] Left Fork's claims; and evidence of spoliation of evidence. (Opinion, February 15, 2000, at 10–11.)

"II. Trial court erroneously granted summary judgment in favor of the appellees, Global Industrial Technologies, Inc., Harbison–Walker Refractories Company, and TMPSC, Inc. (collectively the 'Global Group') on Left Fork's claims for the Global Group's breach of its warranty obligations; negligent manufacture and repair of mining equipment; fraudulent misrepresentations and omissions by the Global Group inducing Left Fork to enter the agreement for the

purchase of mining equipment; and spoliation of evidence. (Opinion, February 15, 2000, at 4–10.)

"III. The trial court erroneously prohibited Left Fork from filing additional papers as of record in the Cuyahoga [County] Court of Common Pleas on December 17, 1999 and compromised Left Fork's ability to both prove its claims and preserve the record for appellate review."