RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0409p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

PETER B. SCOVILL,

Plaintiff-Appellant/
Cross-Appellee,

Nos. 04-3630/3683

v.

WSYX/ABC, SINCLAIR BROADCAST GROUP, INC.,
SINCLAIR MEDIA II, INC., SINCLAIR
COMMUNICATIONS, INC., WSYX-TV, WTTE-TV,
INC., WTTE/WSYX-TV, WTTE CHANNEL 28 INC.,
and DAVIS SILVERSTEIN,

Defendants-Appellees/
Cross-Appellants.

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 02-00679—Edmund A. Sargus, Jr., District Judge.

Argued: September 16, 2005

Decided and Filed: October 6, 2005

Before: KENNEDY, COOK, and GRIFFIN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Frederick M. Gittes, GITTES AND SCHULTE, Columbus, Ohio, for Appellant.
Matthew C. Blickensderfer, FROST, BROWN & TODD, Cincinnati, Ohio, for Appellees.
**ON BRIEF:** Frederick M. Gittes, Kathaleen B. Schulte, GITTES AND SCHULTE, Columbus,
Ohio, F. Paul Bland, Jr., TRIAL LAWYERS FOR PUBLIC JUSTICE, Washington, D.C., for
Appellant. Matthew C. Blickensderfer, FROST, BROWN & TODD, Cincinnati, Ohio, Thomas V.
Williams, FROST, BROWN & TODD, Columbus, Ohio, for Appellees.

_____

## OPINION

_____

KENNEDY, Circuit Judge. Plaintiff Peter Scovill filed this action against his former
employer claiming he was discriminated against on account of his age in violation of the Age
Discrimination Employment Act ["ADEA"], 29 U.S.C. § 621 and Ohio law, R.C. § 4112.02.

1

Plaintiff also brought a claim for unlawful retaliation under R.C. § 4112.02, invasion of privacy, promissory estoppel, and violation of Ohio public policy.  The Defendants removed this case to federal court under 28 U.S.C. §§ 1441 and 1446(b) and filed a Motion to Dismiss or, in the alternative, Stay the Action Pending Arbitration because the Plaintiff had previously signed an arbitration agreement.   The district court held the arbitration agreement was enforceable, and granted the Defendants' Motion to Dismiss, but severed three provisions from the agreement.

On appeal, Plaintiff argues that the district court should not have severed the unenforceable provisions, but should have refused to enforce the entire agreement.  Plaintiff also contends the district court erred in finding that the arbitration agreement was not unconscionable.

On cross appeal, Defendants argue that the court violated the Supreme Court's holding in *Pacificare* by deciding, prior to arbitration, the enforceability of a cost-shifting provision and an evidentiary provision. *See Pacificare Health Systems, Inc. v. Book*, 123 S.Ct., 1531 (2003) Defendants further argue that even if the district court had this authority, the court erred in holding the cost-shifting provision unenforceable.  For the reasons which follow, we affirm the severance of two of the provisions, the cost-shifting provision and the remedies provision, and leave the interpretation of the evidentiary provision to the arbitrator.

### BACKGROUND

Plaintiff, Peter Scovill, was employed by the Defendants as a news anchor/reporter.  He first began working for Defendants on September 11, 1998.  On September 30, 1998, Plaintiff signed an Employment Agreement ("the Agreement").  The Agreement  includes an arbitration provision which provides, in relevant part, "Employee and Employer agree to submit any dispute or controversy arising out of or relating to this Agreement...exclusively to final and binding arbitration before a neutral arbitrator."

While the Agreement provided for only a three year contract, the Plaintiff claims he was told by a  manager that he could expect both a salary increase and a contract renewal.  On or about August 22, 2001, the Plaintiff was told his contract would not be renewed; on or about January 7, 2002, the Defendants demoted Mr Scovill from his position as a news anchor; and on or about February 6, 2002, Defendants gave Plaintiff a written reprimand.  On February 25, 2002, Plaintiff complained to his employer about discriminatory conduct.  Eighty-one days after this complaint, Plaintiff was notified that his employment was being terminated.

Plaintiff subsequently filed an action in the court of Common Pleas for Franklin County, Ohio alleging that the Defendants, his former employer, discriminated against him on account of his age, in violation of the ADEA.   The Defendants removed this action to the district court and filed a Motion to Dismiss or Stay Pending Arbitration.

The district court held three provisions in the Agreement were unenforceable: (1) a cost-shifting provision, (2)  a remedies provision, and (3) an evidentiary provision. *Scovill v. WSYX/ABC, Sinclair Broadcast Group, Inc.,* 312 F. Supp.2d 955 (2004).  The court then severed these provisions, enforced the remainder of the arbitration agreement, and granted the Defendants' Motion to Dismiss.

### I.   *Plaintiff's Arguments*

A.      The Plaintiff argues that the district court erred in severing the provisions that the court held unenforceable.  This presents a question of law to be reviewed de novo. *Morrison v. Circuit City Stores, Inc.,* 317 F.3d 646, 674 (6th Cir. 2003).

The Plaintiff first contends that Ohio law, which is applicable in this case, instructs that when an arbitration agreement includes unenforceable provisions, courts should not sever those provisions, but rather, should find the agreement unenforceable in its entirety. Yet, we have already decided, and recently reaffirmed in an *en banc* decision, that severance of unenforceable provisions is permissible. *See Morrison*, 317 F.3d 646.

In *Morrison*, this court found a cost-splitting provision and a limitation on remedies provision to be unenforceable. We then addressed the issue of severability, finding that courts should look to the parties intentions as revealed by their agreement. *Morrison* 317 F.3d at 673; *see also Great Earth Cos. v. Simons*, 288 F.3d 878, 890-91 (6th Cir. 2002) (this court holding that when an agreement includes a severability provision, the intent of the parties and policy dictate in favor of following the intent of the parties and enforcing the arbitration agreement). We observed that if a severability clause is included in an agreement, then such a clause expresses the parties intentions in favor of severance. *Morrison*, 317 F.3d at 674-75.

In *Morrison*, while the parties did include a severability clause, it was unclear from that clause whether the parties intended that the unenforceable provisions at issue were to be severed. However, despite this uncertainty, this court still ordered that the provisions be severed, since Supreme Court precedent instructs that courts "resolve any doubts as to arbitrabilty 'in favor of arbitration'." *Morrison,* 317 F.3d at 675 (quoting *Moses H. Cone Memorial Hosp*., 460 U.S. at 24-25).

In this particular case, like in *Morrison*, the parties included a severability clause; however, unlike in *Morrison*, the severability clause in this case leaves little to doubt. The severability clause states:

> 14.7 *Severability*. All rights, powers and remedies provided herein may be exercised only to the extent that the exercise thereof does not violate any applicable laws and are intended to be limited to the extent necessary so that they will not render this Agreement invalid or unenforceable. If any term or provision of this Agreement shall be held to be invalid, illegal, or unenforceable, the legality, validity, and enforceability of the other terms and provisions shall in no way be affected thereby and said illegal, unenforceable or invalid term or provisions shall be deemed not to be part of this Agreement.

The parties also included another separate severability clause in the arbitration provision which states, in relevant part:

> Employee and Employer agree that if any court of competent jurisdiction declares that any part of this arbitration provision is illegal, invalid or unenforceable, such a declaration will not affect the legality, validity or enforceability of the remaining parts of the arbitration provision and the illegal, invalid or unenforceable part will no longer be part of this arbitration provision.

The party's intentions, as understood by the inclusion of two separate severability clauses, clearly indicates a preference for severance. Thus, the district court did not err in severing these provisions.

Next, the Plaintiff argues that even if this court decides that severance is permissible in general, that severance is not permissible in the case at bar because there are multiple unenforceable provisions. The Plaintiff cites to cases where courts have found that the cumulative effect of multiple illegal provisions may "taint" the overall agreement and prevent a court from enforcing that agreement. *See e.g. Alexander v. Anthony Internat'l, L. P.*, 341 F.3d 256, 261 (3rd Cir. 2003) ("The

cumulative effect of so much illegality prevents us from enforcing the arbitration agreement. Because the sickness has infected the trunk, we must cut down the entire tree."). Again, however, *Morrison* is instructive. In *Morrison*, this court found two provisions unenforceable and still enforced the agreement, noting that, "when the arbitration agreement at issue includes a severability provision, courts should not lightly conclude that a particular provision of an arbitration agreement taints the entire agreement." *Morrison*, 317 F.3d 675. In this case, we find only two provisions are unenforceable.[1] We do not think the Plaintiff has presented enough evidence to show that the agreement in this case is one where the unenforceable provisions are so overwhelming as to "taint" the rest of the agreement.

Finally, the Plaintiff argues that even if the district court did not err in severing the unenforceable provisions, the district court erred by "rewriting" the provisions. The Plaintiff argues the court "*affirmatively drafted* whole new terms, instead of merely striking out illegal terms." (emphasis added) The Plaintiff misstates the district court's actions. The district court did not invent new contract terms. Rather, after severing the unenforceable provisions pursuant to the holding in *Morrison*, the district court concluded that the "same substantive law and remedies regarding age discrimination would apply as in this Court." *Scovill*, F. Supp. 2d at 977. As the district court did not "affirmatively draft" new terms as alleged by the Plaintiff, we find this argument is without merit.

In sum, the district court correctly severed the unenforceable provisions and enforced the remainder of the arbitration agreement.

B.    The Plaintiff also argues the district court erred by holding that the agreement was not unconscionable. Under Ohio law, the unconscionabilty doctrine has two components:

> (1) substantive unconscionabilty, *i.e.,* unfair and unreasonable contract terms, and (2) procedural unconscionabilty, *i.e.,* individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible. *Both elements must be present to find a contract unconscionable.*

(emphasis added) *Jeffrey Mining Prods., L.P. v. Left Fork Mining Co.,* 758 N.E.2d 1173, 1181 (2001) *quoting Dorsey v. Contemporary Obstetrics & Gynecology, Inc,* 113 Ohio App.3d 75 (1996). The district court ruled that the Agreement was not procedurally unconscionable and declined to directly address whether the Agreement was substantively unconscionable since the Plaintiff needed to establish both components. *Scovill*, 312 F. Supp.2d at 964-65. We affirm the district court's holding.

Procedural unconscionabilty exists where the circumstances surrounding a party to the contract were such that no voluntary meeting of the minds was possible. *Jeffrey*, 758 N.E.2d at 1181. Ohio courts look to "factors bearing on the relative bargaining position of the contracting parties, including their age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, and whether alterations in the printed terms were possible." *Cross v. Carnes*, 132 Ohio App.3d 157, 169 (1998). Further, it is not enough that the parties have unequal bargaining power, a vast disparity is required. *Faber v. Menard, Inc.*, 367 F.3d 1048, 1054 (8th Cir. 2004).

With these factors in mind, the following represents the circumstances surrounding the Plaintiff's bargaining position: the Plaintiff is college-educated; he is experienced in his profession as, prior to his job with Defendants, he worked for a different broadcasting group for over ten years; he has previously signed an employment contract that included a somewhat similar arbitration agreement; he admits to reading the agreement and, he was aware that he had an opportunity to discuss

---

[1] The district court found three provisions were unenforceable, however, as discussed in II.A we hold that the district court improperly ruled on the legality of the evidentiary provision.

the agreement because he not only asked his supervisors questions about it, but he even negotiated his housing expenses after signing it.  As the district court indicated, "In this case...there is no set of facts that would entitle the Plaintiff to relief from the arbitration agreement on the grounds of procedural unconscionabilty." *Scovill*, 312 F. Supp.2d at 964.

Because we agree with the district court's holding that the Plaintiff failed to show procedural unconscionabilty, we do not address the Plaintiff's arguments regarding substantive unconscionabilty since Ohio law requires that both components be present.  *See Jeffrey,* 758 N.E.2d 1173.

## II.   *The Defendant's Arguments*

A.      The district court found two provisions to be unenforceable: a provision affecting the evidential standard and a cost-shifting provision.  The Defendants argue that the decision regarding the enforceability of both of these provisions should have been made by the arbitrator under the Supreme Court's decision in *Pacificare*.

In *Pacificare,* the Court declined to decide whether a provision violated a party's rights prior to arbitration because it was unclear how the arbitrator would construe that provision. *Pacificare,* 538 U.S. at 407 n.2.  The Supreme Court stated, "since we do not know how the arbitrator will construe the remedial limitations, the questions whether they render the parties' agreements unenforceable and whether it is for courts or arbitrators to decide enforceability in the first instance are unusually abstract...the proper course is to compel arbitration." *PacifiCare,* 538 U.S. at 406-407.  In sum, since the provision at issue was open to interpretation and since the arbitrator could interpret it in such a way as to avoid violating the parties' rights, the court left that interpretative decision to the arbitrator.  If, after arbitration, the court determined the arbitrator interpreted it in such a way as to violate a party's rights, then the court would reverse that decision.

The district court found that Paragraph 15 of the Arbitration Agreement changed the evidential standard normally applied in the context of an employment discrimination claim and held that the provision was unenforceable.  The Defendants argue that the district court had no authority to make this determination *before* the case went to arbitration. The provision at issue, in relevant part, provides:

> (i) it is employer's right in its sole and absolute discretion to determine the quality of the performance being given by an Anchor/Report and Employer has the right to command a high level of professionalism from performers in these positions; and

> (ii) if the Arbitrator is satisfied that Employee did engage in the conduct complained of, or if the Arbitrator is satisfied that Employer reasonably believed that Employee engaged in the conduct complained of, the Arbitrator is not to determine what discipline she or he would have taken had she or he been in the position of Employer, but rather the Arbitrator must uphold the action taken by Employer.

The district court found that this provision was unenforceable as it altered the traditional burden shifting method. Under a traditional burden-shifting method, once the plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse employment action.  If the defendant satisfies this burden, the plaintiff must then show, by a preponderance of the evidence, that the defendant's reason was a pretext for age discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).   In sum, even where the defendant proffers a nondiscriminatory reason, the defendant may still be held liable if the Plaintiff provides sufficient evidence to reject the employer's explanation.

The district court found this provision problematic because of the language in this provision providing that "if the arbitrator is satisfied that employee did engage in the conduct complained of...the Arbitrator must uphold the action taken by the Employer." *Scovill*, 312 F. Supp.2d at 974.

Such a provision could be read as altering the evidentiary standard by preventing the Plaintiff from showing the proffered nondiscriminatory reason was a pretext.

However, this provision may be read another way.  The employer may well have included the provision only to guarantee that the specific disciplinary action the employer imposed would be upheld.  For example, the employer may have wanted to ensure that a suspension without pay for thirty (30) days, would not be reduced to a ten (10) day suspension or, that a discharge not be reduced by the arbitrator to suspension without pay.  There is nothing in the language of this provision that suggests that it was intended to alter an employee's prima facie case under the ADEA.  The language in the provision only requires that the arbitrator uphold the employer's actions.

Since the arbitrator may interpret this provision in such a way as to avoid infringing upon the Plaintiff's rights, we reverse the district court's finding that this provision was unenforceable.  Under *Pacificare*, the district court should have left interpretation of this provision to the arbitrator subject to review after arbitration.

The Defendants also argue that, under *Pacificare*, the enforceability of the cost-shifting provision also should have been decided after arbitration.  However, since the cost-shifting provision is clear as to its application, *Pacificare* is not implicated.

Further, in *Morrison,* this circuit addressed when a court should determine the enforceability of a cost-splitting provision and found it would be *error* for a district court to compel arbitration "*without first severing these unenforceable* provisions from the agreement." *Morrison* 317 F.3d at 675 (emphasis added).  To further highlight this point the court also stated, "We hold that potential litigants must be given an opportunity, *prior to arbitration on the merits*, to demonstrate that the potential costs of arbitration are great enough to deter them..." *Id.* at 663 (emphasis added). Thus, under *Morrison*, we hold that the district court was required to decide this issue prior to arbitration.

B.      The Defendants also argue that even if the district court had the authority to decide the enforceability of the cost-shifting provision prior to trial,  the district court erred in finding that the cost-shifting provision was unenforceable.  With respect to costs, the agreement provides:

> Arbitration proceedings shall be held in they city or town where Employee's employment services were performed, or at Employer headquarters or at any other location mutually agreed upon by Employee and Employer.  The arbitrator shall determine the prevailing party in the arbitration and the costs of the arbitration shall be paid by the non-prevailing party.

The district court found this provision to be unenforceable and again relied on this circuit's *en banc* decision in *Morrison*.  In *Morrison*, the arbitration agreement included a cost-splitting provision which the court held unenforceable.  This circuit went on to set out a framework for determining when to enforce a cost-splitting provision:

> if the reviewing court finds that the cost-splitting provision would deter a substantial number of similarly situated potential litigants, it should refuse to enforce the cost-splitting provision in order to serve the underlying functions of the federal statute. In conducting this analysis, the reviewing court should define the class of such similarly situated potential litigants by job description and socioeconomic background. It should take the actual Plaintiff's income and resources as representative of this larger class's ability to shoulder the costs of arbitration.

*Morrison*, 317 F.3d at 663-64.

The Defendants first claim that the district court miscalculated the arbitration costs. As the Defendants are disputing the court's factual determination, the district court's findings are reviewed for clear error. *United Church of Christ v. Gateway Economic Development Corp. of Greater Cleveland, Inc.*, 383 F.3d 449, 451 (6th Cir. 2004).

The Defendants agree with most of the district court's findings regarding the costs including that for a claim valued at $300,000: the filing fee would be $3,250, the case service fee would be $1,250 and the daily rate would be $1,260. Yet, based upon these agreed-upon numbers the district court found the arbitration costs would be $15,310 "at minimum" (*Scovill*, 312 F. Supp.2d at 968), while the Defendants figure the costs would be closer to $10,540 (Defendant's Reply Brief at 15). It appears that the difference in cost is a result of a difference in the number of days the Defendants and the district court anticipate the arbitrator would need to devote to the arbitration. Both parties agreed to accept, for purposes of calculating the costs, a four-day arbitration hearing. The Defendants, however, assume that these are the *only* days the arbitrator would be working. In contrast, the district court relied upon the Plaintiff's exhibit which suggests the arbitrator would have to listen to discovery disputes, pre-hearing issues, motions before and after the decision, and spend time rendering the decision. Consequently, the district court based its findings on a minimum of 8 1/2 days of arbitrator's fees and noted that it could, in fact, be even longer. *Scovill*, 312 F. Supp.2d at 96.

This circuit reviews findings of fact only for clear error. *See* Fed.R.Civ.Plaintiff. 52(a); *Anderson v. Bessemer City,* 470 U.S. 564, 573-75 (1985). A finding of fact will only be clearly erroneous when, although there may be evidence to support the finding, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson,* 470 U.S. at 573. As the evidence suggests that no mistake has been made, we affirm the district court's finding regarding the costs of arbitration.

Next, the Defendants argue the district court erred in finding that a substantial percentage of similarly situated potential litigants would be deterred from bringing suit because of the cost-shifting provision. As this argument presents an issue of law, this court reviews the district court's determination de novo. *See United Church of Christ,* 383 F.3d at 451.

In deciding this issue, the district court again relied on *Morrison.* In *Morrison*, the Plaintiff was a managerial level employee earning $54,060 a year. The defendant-employer, argued that the cost of arbitration was not prohibitive because the Plaintiff would only have been required to pay, at most, $1,622 for the arbitral forum. *Morrison*, 317 F.3d at 669. This circuit concluded that the cost-splitting provision would deter a substantial percentage of litigants from bringing their claim in the arbitral forum. The court noted that such a choice "really boils down to risking one's scarce resources in hopes of an uncertain benefit." *Id.* at 669-70. Whether the cost is prohibitive "must be considered from the vantage point of the potential litigant... including the fact that the litigant must continue to pay for housing, utilities, transportation, food and other necessities of life in contemporary society despite losing her primary and most likely, only source of income." *Id.* at 669.

The Defendants argue that since the Plaintiff previously made nearly $100,000 a year, Plaintiff's means are such that he would not be deterred from bringing suit in the arbitral forum. The Defendants cite to *Morrison*, where the court did note that some "high-level managerial employees and others with substantial means can afford the costs of arbitration..." *Id.* at 665.

Yet, *Morrison* also requires that a district court examine the costs of arbitration from the vantage point of the Plaintiff. In this case, the district court noted that the Plaintiff recently lost his job, his future income is uncertain as he just began a business, he has children to support, and it does not appear as though he amassed a great savings to use in arbitration proceedings. *Scovill*, 312 F. Supp.2d at 970.

Additionally noteworthy is the fact that the provision at issue in *Morrison* was a cost-*splitting* provision and the Plaintiff, at most, would have been required to pay 3% of his/her salary while the employer would pay for the rest of the costs of arbitration. In this case, the provision is a cost-*shifting*, which is arguably more of a deterrent to potential litigants as the litigant may have to bear the entire costs if they are unsuccessful. Consequently, we agree with the district court's holding that such a provision would deter a substantial number of litigants in the Plaintiff's position. The court did not err in severing this provision.

## CONCLUSION

For the foregoing reasons, we REVERSE the district court's finding that the evidentiary provision is unenforceable and AFFIRM the remainder of the district court's opinion.