[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 16-15580

————————————————

D.C. Docket No. 8:15-cv-02775-MSS-TBM

CITA TRUST COMPANY AG,
a Switzerland Corporation,

                                                            Plaintiff - Appellant,

versus

FIFTH THIRD BANK,
an Ohio banking corporation,

                                                            Defendant - Appellee.

————————————————

Appeal from the United States District Court
for the Middle District of Florida

————————————————

(January 16, 2018)

Before MARCUS, MARTIN, and NEWSOM, Circuit Judges.

MARCUS, Circuit Judge:

In this commercial contract dispute, filed in federal court based on diversity jurisdiction, 28 U.S.C. § 1332, Cita Trust Company AG appeals the district court's dismissal of its complaint against Fifth Third Bank.  In 2011, Cita contracted for Fifth Third to take custody of around $428 million worth of bonds owned by Cita.  In 2013, Fifth Third sent the bonds to a third party.  And in 2015, Cita sued Fifth Third, claiming that this transfer was in breach of the custody contract, negligent, and in violation of Fifth Third's fiduciary duty.

Fifth Third moved to dismiss Cita's complaint, claiming that it was filed outside of the contract's one-year limitation period for filing any action between the parties.  In response, Cita did not contest that the suit was untimely under that provision but instead argued that the provision was unconscionable and should not be enforced.  In the conclusion of its response -- but nowhere else -- Cita alternatively asked the court to dismiss the complaint without prejudice so that it could file an amended complaint.  The district court concluded, however, that the provision was not unconscionable and thus that the suit was untimely.  At no time did Cita move the district court for leave to file an amended complaint, nor did it advise the court about the substance of what it would have included in the amendation.

2

On appeal, Cita argues that the district court erred in enforcing the contractual one-year limitation period, and that the trial court abused its discretion by not granting leave to amend the complaint. After careful review, and with the benefit of oral argument, we conclude that these arguments are without merit and affirm the judgment of the district court.

**I.**

On January 13, 2011, Cita, a Swiss trust, entered into a Custody Services Agreement ("Agreement") with Fifth Third, an American bank. The fifteen-page Agreement provided that Fifth Third would take custody of certain bonds belonging to Cita -- 428 million units of CUSIP G5722UAA0, known as Luxor bonds, worth $428 million -- hold them for safekeeping, and provide certain ancillary services, in return for which Cita would pay Fifth Third $90,000 per year. Cita then activated a Global Securities account with Fifth Third into which the bonds were transferred. The bonds were then moved from the U.K. market to Euroclear, an international securities depository. Over the next two years, Cita received bank statements from Fifth Third showing that the bonds remained in its account.

Sometime in August 2013, Fifth Third removed the Luxor bonds from Cita's account without notice or warning. In September 2013, Euroclear indicated it would no longer report the balance of Luxor bonds; the bonds were also delisted

from the London Stock Exchange.  On September 20, 2013, a Fifth Third private-wealth banker and a corporate representative met with Cita and informed it that Fifth Third had sent Cita's bonds back to the original issuer.  Around this time, Cita received notice from Fifth Third that it could no longer reflect the Luxor bonds as a holding in Cita's account since the bonds were no longer "a book-entry eligible asset through Euroclear."  Cita objected to Fifth Third taking any action regarding the bonds because the bonds had only been delisted, not devalued or canceled.

On December 2, 2015 -- more than two years after Fifth Third informed Cita that it had sent the Luxor bonds to a third party -- Cita sued Fifth Third in the United States District Court for the Middle District of Florida.  The complaint leveled three claims against Fifth Third: (1) breach of contract for failure to maintain custody of the Luxor bonds; (2) negligence for failing to adequately safeguard the bonds; and (3) breach of fiduciary duty for "willfully, wrongly, and in bad faith" failing to take appropriate measures to safeguard the bonds.

Fifth Third moved to dismiss Cita's complaint, urging the court that the claims were untimely.  Fifth Third pointed out that the parties' Agreement contained a clause expressly stating that "Customer shall bring no cause of action, regardless of form, more than one year after the cause of action arose."  The Agreement also included a choice-of-law provision that specified Ohio law as the

4

governing law, and Fifth Third argued that under Ohio law this contractual limitation period was enforceable. Because this suit was brought in Florida, Fifth Third also noted that the Eleventh Circuit "has recognized that shortened limitation periods in a contract construed under the laws of a state which allow for them are valid and enforceable in Florida."

Cita argued, however, that the contractual limitation period was unconscionable and unenforceable. In the concluding sentence of its response, Cita asked the district court, if it were to grant the motion to dismiss, to do so "without prejudice" in order to allow Cita to amend its complaint.

The district court dismissed Cita's claims as untimely. The court explained that the parties chose Ohio law to govern the Agreement and that the Agreement's one-year limitation period was enforceable under Ohio law because the limitation period was (1) clear and unambiguous, and (2) reasonable under the facts of the case. The trial court also concluded that Florida law provided no barrier to applying Ohio law in this suit because Ohio law did not contravene Florida public policy. It then found that Cita was aware of Fifth Third's alleged misconduct no later than September 2013 and thus that Cita's complaint, filed in December 2015, fell outside the one-year limitation period. Accordingly, the district court granted Fifth Third's motion to dismiss with prejudice and directed the clerk to terminate any pending motions.

Cita now appeals the district court's enforcement of the contractual limitation period and the court's implicit denial of leave to amend the complaint.

## II.

We review de novo a trial court's dismissal of a complaint pursuant to Fed. R. Civ. P. 12(b)(6). Berman v. Blount Parrish & Co., 525 F.3d 1057, 1058 (11th Cir. 2008). But we review only for abuse of discretion a district court's denial of a motion to amend a complaint. Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co., 470 F.3d 1036, 1040 (11th Cir. 2006).

## A.

Cita claims that the district court erred when it dismissed the complaint as untimely, either because the Agreement's one-year limitation period shouldn't have been enforced or because Cita's claim accrued later than the district court determined it did. But the Agreement's limitation period was reasonable, clear, and unambiguous. Cita agreed to file any action within one year when it signed the Agreement and it cannot complain about its contract now.

Cita concedes that Ohio law governs the Agreement. Ohio law governing contractual limitation periods is straightforward: "[P]arties to a contract may validly limit the time for bringing an action on a contract . . . as long as the shorter period is a reasonable one." Angel v. Reed, 891 N.E.2d 1179, 1181 (Ohio 2008). This shorter period must be stated "in words that are clear and unambiguous to the

6

policyholder."    Id.    Determining when a limitation provision is clear and unambiguous is "necessarily [ ] fact-sensitive" and must be done "on a case-by-case basis."  Motorists Mut. Ins. Co. v. ADT Sec. Sys., 1995 WL 461316, *4 (Ohio Ct. App. Aug. 4, 1995).

On the facts of this case, the Agreement's limitation provision was reasonable, clear, and unambiguous.  For starters, Ohio law strongly supports the conclusion that a one-year limitation period is not inherently unreasonable.  Thus, for example, in Universal Windows & Doors, Inc. v. Eagle Window & Door, Inc., 689 N.E.2d 56 (Ohio Ct. App. 1996), an Ohio appellate court held that a contract provision allowing a one-year period to file suit for breach of the agreement was reasonable and enforceable.  Id. at 59.  And in R.E. Holland Excavating Co. v. Montgomery Cty. Bd. of Comm'rs, 729 N.E.2d 1255 (Ohio Ct. App. 1999), another Ohio appellate court upheld enforcement of a much shorter sixty-day limitation period.  Id. at 1259.

Moreover, the limitation provision in this case was clearly presented in the Agreement.  "[A] contracting party is presumed to know the reasonable import of the contents of a signed agreement," Ball v. Ohio St. Home Servs., Inc., 861 N.E.2d 553, 557 (Ohio Ct. App. 2006), and the import of this provision was more than reasonably clear here.  The text of the provision -- "Customer shall bring no cause of action, regardless of form, more than one year after the cause of action

7

arose" -- made perfectly clear that it was intended to limit the time in which Cita could bring an action against Fifth Third. The provision appeared in Paragraph 13 -- titled "Limitation of Warranties" -- which was the only paragraph to include the word "limitation" in the title, and which discussed issues of liability throughout. Paragraph 13 came on the ninth page of a fifteen-page document, only seven of which contained the substance of the Agreement. The text of the Agreement was presented in a single page-wide column, in a legible and reasonably sized font. Again, Ohio courts have found similar -- and even less clear -- provisions enforceable. See, e.g., Jeffrey Mining Prods., L.P. v. Left Fork Mining Co., 758 N.E.2d 1173, 1177–78, 1181 (Ohio Ct. App. 2001) (enforcing a similarly worded one-year limitation period appearing at the end of a paragraph titled "Warranty and Limitation of Remedy and Liability"); Collins v. Click Camera & Video, Inc., 621 N.E.2d 1294, 1296, 1300 (Ohio Ct. App. 1993) (enforcing a liability waiver presented in "extremely small print").

Finally, the provision was unambiguous. Cita claims that the Agreement was ambiguous due to a conflict between the limitation provision and a separate indemnity provision that required Cita to indemnify Fifth Third against a variety of third-party claims but that also says Fifth Third shall not be indemnified from any claims arising from its own "gross negligence or willful misconduct." There is obviously no ambiguity here; the indemnification provision and its exception have

nothing to do with the claims brought by Cita against Fifth Third, and they certainly do not relate to <u>when</u> those claims must be brought. The indemnification provision is simply irrelevant.

Cita also claims that the limitation provision was ambiguous because its use of "arose" did not specify when the one-year period would actually begin to run. This argument quickly collapses. Ohio's courts have made it perfectly clear that when a statute requires actions to be brought within a certain time after a cause of action "arose," "the terms 'arose' and 'accrued' are synonymous." <u>Browning v. Burt</u>, 613 N.E.2d 993, 1004 (Ohio 1993). More generally, a cause of action arises or accrues at "the time the wrongful act was committed," <u>O'Stricker v. Jim Walter Corp.</u>, 447 N.E.2d 727, 730 (Ohio 1983), although in some cases, the cause of action doesn't accrue until a plaintiff discovers or should have discovered his injury. <u>See</u> <u>Investors REIT One v. Jacobs</u>, 546 N.E.2d 206, 209 (Ohio 1989). Which accrual rule applies is a legal question, not a contractual ambiguity -- Ohio courts have not hesitated to enforce contractual limitation periods that simply refer to when a cause "accrues" or "arises." <u>See, e.g.</u>, <u>Jeffrey Mining Prods.</u>, 758 N.E.2d at 1178, 1181. Cita has not provided us with any reason to think that a term Ohio has so clearly defined in its statutory law is impermissibly ambiguous when used in a commercial contract between sophisticated parties.

Cita nevertheless claims that the Agreement failed to make clear whether Cita's cause of action arose when Fifth Third surrendered the Luxor bonds to a third party, when the third party claimed the bonds for itself, when Fifth Third refused to explain how or why the transfer occurred, when ownership of the bonds was transferred, or when the subject security matured.  But these questions all concern what Cita's claims are, not when or how those claims arose.  The contractual limitation period simply and clearly required Cita to bring any actions it wanted within one year of accrual.

Cita also offers a number of arguments on appeal that were not raised in the district court: it claims that even if the contractual limitation period were enforceable, either the discovery rule or the doctrine of fraudulent concealment should have tolled the time to file this suit, or alternatively that because the Luxor bonds have not yet matured, the limitation period has not yet begun to run.  As a general matter, "issue[s] not raised in the district court and raised for the first time in an appeal will not be considered by this [C]ourt."  Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004) (quotation omitted).  This rule is not jurisdictional, and we may permit issues to be raised for the first time on appeal in five discrete circumstances:

> First, an appellate court will consider an issue not raised in the district court if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice.  Second, the rule may be relaxed where the

10

appellant raises an objection to an order which he had no opportunity to raise at the district court level.  Third, the rule does not bar consideration by the appellate court in the first instance where the interest of substantial justice is at stake.  Fourth, a federal appellate court is justified in resolving an issue not passed on below . . . where the proper resolution is beyond any doubt.  Finally, it may be appropriate to consider an issue first raised on appeal if that issue presents significant questions of general impact or of great public concern.

Id. at 1332 (quotation omitted).  None of these "exceptional conditions" applies in favor of Cita in this case.  Id.  First, none of these additional arguments involve pure questions of law, and we can discern no miscarriage of justice in enforcing the express terms of a contract entered into between two sophisticated parties.  Moreover, Cita had every opportunity to raise these matters in the district court.  Nor can we discern any reason to ignore our rule here because there's not the slightest indication that the interests of substantial justice are at stake.   Nor, finally, can we discern any issue of first impression of great import arising under Ohio's law of contract.  And even if Cita could establish a significant question of great public concern arising under Ohio law -- and it hasn't even begun to suggest one -- the Ohio courts would be the more appropriate forum in which to raise the matter.

But even if we did consider Cita's unpreserved arguments, we would conclude that they all lack merit.  And even if one or more were meritorious, they would not actually help Cita.  These new arguments all boil down to the premise

that Cita's claim accrued at some time after September 2013, when it learned the bonds had been transferred.  But Cita has not alleged it has learned anything new to bolster its claim between September 2013 and today.  Absent this critical component, Cita is stuck with only two possibilities: either its claim accrued in September 2013 when it learned that Fifth Third had transferred the bonds, or its claim has still not accrued.  The former is true, and so the claim is untimely; but even if the latter were true, Cita's claim would not yet be ripe.  Either way, this suit cannot survive.

**B.**

Cita also claims that the district court abused its discretion when it denied Cita leave to amend its complaint.  But Cita did not properly move for leave to amend, so the district court did not abuse its discretion in denying that leave.  And even if Cita had properly moved for leave, it has failed to establish that amending its complaint would not be futile, and so Cita would lose regardless.

Federal Rule of Civil Procedure 15 provides that "[a] party may amend its pleading once as a matter of course within . . . 21 days after serving it."  Fed. R. Civ. P. 15(a)(1)(A).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave," but "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  This Court has explained that "[f]iling a motion is the proper method to request leave to

amend a complaint," and that a motion for leave to amend "should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." Long v. Satz, 181 F.3d 1275, 1279 (11th Cir. 1999).

In this case, Cita did not seek to amend its complaint until a month and a half after Fifth Third waived service, did not file a motion requesting leave to amend, and did not set forth the substance of the proposed amendment or attach a copy of it. All Cita did was, in the conclusion of its response in opposition to Fifth Third's motion to dismiss the complaint, alternatively request dismissal without prejudice so that it could amend the complaint.  But this Court has clearly held that "[w]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." Rosenberg v. Gould, 554 F.3d 962, 967 (11th Cir. 2009) (quotation omitted); see also Long, 181 F.3d at 1279–80 (holding that a plaintiff's failure to request leave to amend anywhere outside of her opposition to the motion to dismiss "preclude[d] the plaintiff's argument on appeal that the district court abused its discretion by denying her leave to amend her complaint").  Cita thus failed to properly move for leave to amend, and the district court soundly rejected the infirm request.  But, finally, even if Cita had properly moved to amend its complaint, amendment would have been futile, because Cita has failed to point to any additional facts or allegations that could make its claims timely.

On this record, Cita cannot win.  The district court properly dismissed its complaint.

**AFFIRMED.**